906 N.E.2d 248 (2009)
In the Matter of the Termination of the Parent-Child Relationship of G.H., the Child, and Elizabethe G., the Mother, and Allen H., the Father
Elizabethe G., Appellant-Respondent,
v.
Department of Child Services, Appellee-Petitioner.
No. 06A01-0811-JV-549.
Court of Appeals of Indiana.
May 20, 2009.
*249 Deborah K. Smith, Thorntown, IN, Attorney for Appellant.
Jon R. Rogers, Indiana Department of Child Services, Lebanon, IN, Attorney for Appellee.

OPINION
CRONE, Judge.

Case Summary
Elizabethe G. ("Mother") appeals the termination of her parental rights as to G.H. We affirm.

*250 Issue
Did the juvenile court commit clear error by terminating Mother's parental rights?

Facts and Procedural History
On October 10, 2005, a Boone County law enforcement officer informed the Boone County Division of the Indiana Department of Child Services ("DCS") that Mother was being arrested at her home and that no one else was present to care for her daughter, fourteen-month-old G.H. DCS intake officer Karina Rider went to the home that day to investigate the complaint. DCS took custody of G.H. and placed her in foster care. On the following day, Rider interviewed Mother in jail. On October 12, 2005, DCS filed a petition alleging that G.H. was a Child in Need of Services ("CHINS"). According to the petition, "[t]he entire home is in a general filthy condition with dirty dishes, bottles, animal feces and soiled clothes in each room in easy reach of the child. The child was filthy." Appellant's App. at 25. DCS alleged that G.H. was a CHINS as defined by Indiana Code Section 31-34-1-1, in that her physical or mental condition was seriously impaired or endangered as a result of the inability, refusal, or neglect of Mother to provide the child with necessary supervision. DCS also stated that G.H. was a CHINS in that Mother's failure to maintain a clean home seriously endangered G.H.'s physical and mental health. See Ind.Code § 31-34-1-2.
Also on October 12, 2005, the juvenile court held an initial hearing on the CHINS petition. Mother appeared pro se and by video from jail. DCS was unable to notify G.H.'s father, Allen H. ("Father"), of the hearing. Mother admitted the allegations in the CHINS petition. The juvenile court adjudged G.H. a CHINS and ordered DCS to continue her foster care placement. One week later, on October 19, 2005, DCS returned G.H. to Mother's custody. On December 7, 2005, the juvenile court held a dispositional hearing, at which Mother and Father appeared pro se. On December 20, 2005, the juvenile court issued a dispositional decree, ordering continued placement with Mother, with several conditions, including the maintenance of a clean, safe home environment, and random drug screens for Mother and Father.
As will be discussed in more detail below, DCS removed G.H. from Mother's custody and returned G.H. to Mother's custody several times over the two years following the entry of the juvenile court's dispositional decree. G.H. was placed both in non-relative and relative foster care situations during this time. On December 11, 2007, DCS filed its petition to terminate Mother's parental rights. In January 2008, DCS filed a petition to terminate Father's parental rights. The juvenile court held a hearing on both petitions, and on September 26, 2008, it issued an order terminating both Mother's and Father's parental rights. Mother now appeals. Additional facts will be provided as necessary.

Discussion and Decision
Mother claims that the evidence was insufficient to support the termination of her parental rights as to G.H.
[T]his Court has long had a highly deferential standard of review in cases concerning the termination of parental rights. Thus, when reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. In deference to the juvenile court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *251 Clear error is that which leaves us with a definite and firm conviction that a mistake has been made.
In re A.B., 888 N.E.2d 231, 235 (Ind.Ct. App.2008) (citations omitted), trans. denied.
Pursuant to Indiana Code Section 31-35-2-4, a petition for termination of parental rights must allege that:
(A) one (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding under IC XX-XX-XX-X.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen
(15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.
(emphases added). It is important to note that DCS must allege and prove only one of the three allegations listed in Section (A) and only one of the two allegations listed in Section (B), as well as the allegations listed in Sections (C) and (D).
DCS must prove its allegations by clear and convincing evidence. In re S.F., 883 N.E.2d 830, 835 (Ind.Ct.App. 2008). Clear and convincing evidence need not show that the continued custody of the parent is wholly inadequate for the child's very survival. Id. Instead, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development is threatened by the parent's custody. Id. Without clear and convincing evidence to support each of the four statutory elements, we cannot affirm the termination of a parent-child relationship. In re A.B., 888 N.E.2d at 239.
First, Mother contends that DCS failed to prove by clear and convincing evidence that G.H. had been removed from a parent's care for a sufficient period of time to support termination. In its order, the juvenile court seemed to conclude that the State succeeded in proving that G.H. had been removed from Mother for at least six months under a dispositional decree and that G.H. had been removed from Mother's custody and was under the supervision of DCS for at least fifteen of the most recent twenty-two months, even though the State needed to prove only one of these allegations in order to meet its burden.
Mother directs us to Indiana Code Section 31-35-2-4.5, which states in part that a court shall dismiss the termination petition if the current DCS case plan has documented a "compelling reason" why terminating the parent-child relationship is not in the best interests of the child. According to the statute, "[a] compelling reason may include the fact that the child is being cared for by a custodian who is a parent, stepparent, grandparent ... or a person related ... to the child who is caring for the child as a legal guardian." Ind.Code § 31-35-2-4.5(d)(1). Based on *252 this language, Mother argues that the time G.H. spent living with her paternal grandmother should not count in the calculation of the time G.H. was "removed from her parents" as discussed in Indiana Code Section 31-35-4-2. According to Mother, if one subtracts the time G.H. spent living with her grandmother and Father after being removed from Mother's home, then the time period element of Indiana Code Section 31-35-4-2 is not satisfied.
We note that the applicable statutes do not call for the calculation that Mother suggests. Rather, the plain language of Indiana Code Section 31-35-4-2 states that DCS was required to show only that G.H. was "removed" from Mother's care and "under the supervision" of DCS during the required time periods. There is no mention that time spent with relatives is an exception. Moreover, we note that Indiana Code Section 31-35-2-4.5 states that "[a] compelling reason may include the fact that the child is being cared for" by a related person. Id. (emphasis added). This is permissive language, and therefore, DCS is not required as a matter of law to dismiss a petition to terminate where the child is placed with a relative. James v. Pike County, 759 N.E.2d 1140, 1144 (Ind.Ct.App.2001).
DCS caseworker Jenny Essex testified as to the timeline. DCS first removed G.H. on October 10, 2005, the date of Mother's arrest. G.H. was returned to Mother on October 19, 2005. On December 20, 2005, the juvenile court issued a dispositional order. On March 10, 2006, a home-based service provider visited Mother's home and became concerned when Mother became agitated and upset. A DCS case manager was called to Mother's home, and G.H. was removed and placed in a non-relative foster home. On March 14, 2006, the juvenile court ordered continued placement in foster care. It authorized DCS to return G.H. to Mother's custody prior to the next hearing without need for further order. DCS returned G.H. to Mother's custody on April 27, 2006.
On July 19, 2006, Mother informed DCS that she had sent G.H. to live with Father's mother. On August 2, 2006, upon DCS's motion, the juvenile court approved this placement as a relative foster home, and G.H. remained with her grandmother until June 6, 2007, when she was returned to the custody of Mother and Father, who had reconciled and were living together. On July 5, 2007, Father moved out of Mother's home, and with DCS's approval, G.H. remained in Father's custody until DCS's most recent removal on December 31, 2007. DCS filed its petition for termination of Mother's parental rights on December 11, 2007.
Based on our review of the record, DCS succeeded in presenting clear and convincing evidence that G.H. had been removed from Mother's care for fifteen out of the twenty-two months prior to the filing of the termination petition and for six months following the dispositional decree, although pursuant to the statute, proof of only one of these time periods would suffice. There was no clear error in the juvenile court's determination that DCS satisfied its burden of proof as to this element.
Second, Mother claims that DCS failed to show by clear and convincing evidence that there is a reasonable probability that the conditions resulting in G.H.'s removal will not be remedied. Indeed, the juvenile court did not specifically conclude that the conditions resulting in removal will not be remedied, and it was not required to do so. Indiana Code Section 31-35-4-2(B) requires that the juvenile court find either that there is a reasonable probability that the conditions resulting in removal will not be remedied or that there is a reasonable probability *253 that the continuation of the parent-child relationship poses a threat to the child's well-being. The court specifically made the latter determination. Moreover, it cited many facts to support this conclusion:
15. Mother completed a psychological evaluation and has been diagnosed with bipolar disorder and borderline personality disorder.
16. Mother has not complied with the prescription regimen recommended by her treating physicians. Historically, mother has not complied with the medications prescribed by her physician Dr. Rosaid.
17. When the mother goes off of her prescribed medications she lacks a support system around her to help her realize the effects of being off of her medications and to help her get back on her medications.
18. Based on her historic non-compliance with the medications and based on her lack of support system to help her get back on her medication, it is highly likely that mother will go off of her prescribed medications in the future.
....
22. Mother has been inconsistent in her visitation with the child. For a number of months, [M]other did not exercise any visitation with the child. Although mother has recently began visitation with the child, [M]other has missed numerous visits. Mother has claimed she missed visits due to family problems with her husband as well as not feeling like visiting the child on the date of the scheduled visitation. For a number of these missed visits, mother did not contact DCS to notify DCS that she would miss the visit, therefore the child was already transported to the visit and was awaiting mother's arrival.
23. Mother has been non compliant with individual and group counseling.
24. Mother has reported to both Jenny Essex and Robert Adams that she experiences blackout episodes during which she has violent behavior and does not recall what occurs.
....
26. As a result of the psychological evaluation completed by Robert Adams, he expressed concern regarding mother's ability to parent any child.
....
36. Although mother claims that she will now be a better parent and will now begin taking her medication and addressing her own psychological needs, her behavior over the last number of years suggests a pattern of disruption and mental instability that is likely to continue.
Appellant's App. at 7-11.[1]
Clearly, Mother invites us to reweigh the evidence, which we cannot do. Considering the evidence most favorable to the juvenile court's decision, we find no clear error on this issue.
Third, Mother contends that the State failed to present clear and convincing evidence that termination is in the best interests of G.H. In determining what is in the best interests of a child, the court is required to look beyond the factors identified *254 by DCS and look to the totality of the evidence. McBride v. Monroe County Office of Family and Children, 798 N.E.2d 185, 203 (Ind.Ct.App.2003). In so doing, the juvenile court must subordinate the interests of the parents to those of the children. Id. The juvenile court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Id.
"A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." Castro v. State Office of Family and Children, 842 N.E.2d 367, 374 (Ind.Ct.App. 2006), trans. denied. Although Mother may have a sincere desire to be reunited with G.H., she has been unable to make choices to support G.H.'s well-being. Throughout DCS's involvement in this case, Mother has demonstrated several troubling patterns of conduct, including her failure to regularly take medication to treat her bi-polar disorder, her inconsistent exercise of visitation with G.H., her non-compliance with individual and group counseling, and her "blackout episodes," during which she exhibits violent behavior and has no memory of the same. Appellant's App. at 9-10. These patterns contribute to Mother's continuing inability to provide a safe and stable environment for G.H. In sum, the record supports the juvenile court's conclusion that termination of Mother's parental rights is in G.H.'s best interests.
Affirmed.
BRADFORD, J., and BROWN, J., concur.
NOTES
[1] Although the juvenile court was not required to make the finding that there is a reasonable probability that conditions resulting in removal will not be remedied, we do think that most of the findings which support the juvenile court's conclusion that a continued relationship with Mother would be a threat to G.H.'s well-being would support the other conclusion as well.