**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JOANN M. PRICE**
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
DEPARTMENT OF CHILD SERVICES:

**EUGENE M. VELAZCO, JR.**
DCS, Lake County Office
Gary, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana



FILED

Jan 19 2012, 8:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF K.T. (MINOR CHILD) and | ) ) ) ) | |
| K.A. (FATHER), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 45A03-1105-JT-207 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner, | ) ) | |
| and | ) ) | |
| LAKE COUNTY CASA, | ) ) | |
| Co-Appellee. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Mary Beth Bonaventura, Senior Judge
Cause No. 45D06-1009-JT-175

**January 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

K.A. ("Father") appeals the trial court's order involuntarily terminating his parental rights to his biological child, K.T. Finding no error, we affirm.

**Facts and Procedural History**[1]

K.T. was born July 19, 2009, to J.T. ("Mother"), who experienced serious complications during delivery and went into a coma, in which she apparently remains to this day. The Department of Child Services ("DCS") was notified of Mother's condition and took custody of K.T. because he had no legal guardian to whom he could be released. DCS placed K.T. in foster care. K.T. was born with a hole in his heart, and he eventually underwent two surgeries to repair this condition. He also suffered from a serious kidney infection and a serious respiratory infection. As of April 2011, he was required to see a cardiologist at least every six months and a pediatrician every three months, and he took medication on a daily basis.

On July 22, 2009, DCS Family Case Manager Michelle Saunders spoke with Father, who expressed interest in obtaining custody of K.T. Saunders told Father that DCS recommended that he establish paternity and complete parenting classes and a substance

---

[1] Father's counsel has failed to include a copy of the chronological case summary in the appellant's appendix in violation of Indiana Appellate Rule 50(A)(2)(a) and has included a portion of the trial transcript in the appendix in violation of Indiana Appellate Rules 50(A)(2)(h) and 50(F).

abuse evaluation. Saunders told Father that he could obtain custody of K.T. and have an impending child in need of services ("CHINS") proceeding dismissed "in a matter of 30, 45 days" and asked if he was willing to "triple up on [his] services to help expedite the matter." Tr. at 10. Father indicated that he was willing to do so.

On July 23, 2009, DCS filed a petition alleging that K.T. was a CHINS. At a hearing on that date, the trial court appointed a court-appointed special advocate ("CASA") for K.T. and ordered DCS to provide Father with a drug/alcohol evaluation and any recommended treatment, as well as parenting classes. The court also ordered Father to establish paternity and granted him supervised visitation with K.T. Father failed to promptly establish paternity and also failed to attend at least the first three scheduled parenting classes. Father completed parenting classes in December 2009. Father completed a substance abuse assessment and admitted abusing marijuana and alcohol. He was ordered to submit to random drug screens, many of which he failed to attend, and he tested positive for marijuana in August 2009 and March 2010.

In December 2009, Father admitted to the allegations in the CHINS petition and again was ordered to establish paternity and submit to drug screens.[2] Father eventually established paternity but continued to fail to appear for drug screens. The trial court granted Father twice-weekly supervised visitation, but he failed to attend more than half the visitations, was late to most of the visitations that he did attend, and was never granted unsupervised

---

[2] Also in December 2009, the trial court appointed a guardian ad litem for Mother.

visitation. In June 2010, DCS referred Father for additional parenting services, but his participation was inconsistent.

On September 23, 2010, DCS filed a petition for the involuntary termination of both Father's and Mother's parental rights. On April 20, 2011, the trial court held an evidentiary hearing and issued an order that reads in pertinent part as follows:

> The child(ren) has been removed from his parent(s) for at least six (6) months under a dispositional decree(s) of this Court dated December 16, 2009 as to the Father and March 15, 2010 as to the mother, retroactive to July 22, 2009 ….
>
> The child(ren) has been removed from the parent and has been under the supervision of the LCOFC [sic] for at least fifteen (15) of the most recent twenty-two (22) months.
>
> There is a reasonable probability that the conditions resulting in the removal of the child from his parents' home will not be remedied in that: The child's Mother went into a coma after delivering this child. Mother remains in a vegetative state in a nursing home and cannot properly care for this child. Mother is not a viable option to care for this child. Father did not establish paternity and had no legal rights for the child to be placed with the father.
>
> Father was considered as placement for the child, but father was not consistent with the services. Father was offered services pursuant to a case plan which included parenting classes, substance abuse evaluation, random drug screens, psychological evaluation, supervised visitations and to establish paternity. Father completed the substance abuse evaluation, parenting classes and father eventually did establish paternity. Father would sporadically submit to random screens, but would test positive for marijuana. Father would not make himself available for the services. Father would not keep his scheduled appointments. Father's home was attempted to be investigated for possible placement on numerous occasions, but the case manager was unable to view the home due to father not making himself available. Father was inconsistent and very sporadic with the visitations. There were 89 scheduled visits for father and child, and father only attended 49 visits with 40 of the visits father arriving late. Father cancelled 18 visits and not notifying anyone or attending 6 of the visitations. Father would not interact with the child during the visitations that he attended and left all the caregiving to the grandmother. Father has not bonded with the child. The initial services ceased due to father making himself unavailable for

4

said services. Additional referrals were initiated, but the father would not make himself for those services either [sic]. Services were initiated through Fatherhood Initiative in August 2010, but father is not participating and is not keeping the appointments with the service providers. The service provider attempted to contact and initiate services numerous times and has never succeeded in effectuating same. The case was closed due to non-compliance. The visitations with the child and father are continuing, but father is still very sporadic and often times would arrive at the visitations very late. Visitations have decreased due to father's sporadic appearances at the visitations. Father does not seem interested in the child during the visitations and often times is preoccupied. The child was born with a heart condition and requires constant care and supervision. Child has had two heart surgeries and has been hospitalized with RSV and pneumonia. Father has not attended any doctor's appointments concerning the child's medical condition. Father does not have the tools or resources to care for the child. Numerous attempts to contact father and request his cooperation were initiated to no avail. Father's care plan for the child is daycare. His work schedule requires him to be away for twelve hours at a time, which would leave the baby in daycare with his serious medical conditions.

Relative placement was investigated and and [sic] Interstate Compact was initiated for the grandmother. The relatives were all disqualified and there were no other viable relatives with whom to place the child.

The child was removed at birth and has never been in parental care. Neither parent is not [sic] providing any emotional or financial support for the child. Neither parent has bonded with the child. The child needs constant care due to his medical condition which the parents are unlikely to be in a position to provide.

There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child in that: for the reasons stated above. Additionally, the child deserves a loving, caring, safe and stable home.

It is in the best interest of the child and his health, welfare and future that the parent-child relationship between the child and his parents be forever fully and absolutely terminated.

The Lake County Division of Family and Children [sic] has a satisfactory plan for the care and treatment which is Adoption by the foster parents ….

Appellant's App. at i-iii.  Father now appeals.

**Discussion and Decision**

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).  A parent's interest in the care, custody, and control of his child is perhaps the oldest fundamental liberty interest.  *Id.* Parental interests are not absolute, however, and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights.  *Id.* Therefore, parental rights may be terminated when the parent is unable or unwilling to meet his parental responsibilities.  *Id.*

To involuntarily terminate a parent-child relationship, DCS must allege and prove

(A) that one (1) of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> …

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> …

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b) (inapplicable provisions omitted). DCS must prove these elements by clear and convincing evidence. Ind. Code § 31-37-14-2. "Clear and convincing evidence need not show that the continued custody of the parent is wholly inadequate for the child's very survival. Instead, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development is threatened by the parent's custody." *In re G.H.*, 906 N.E.2d 248, 251 (Ind. Ct. App. 2009) (citation omitted).

In reviewing termination proceedings, we neither reweigh evidence nor assess witness credibility. *In re J.H.*, 911 N.E.2d 69, 73 (Ind. Ct. App. 2009), *trans. denied*. We consider only the evidence that supports the trial court's decision and the reasonable inferences drawn therefrom. *Id*. Typically, where the trial court enters findings of fact and conclusions thereon, our standard of review is two-tiered: we first determine whether the evidence supports the findings and then determine whether the findings support the conclusions. *Id*. In deference to the trial court's unique position to assess the evidence, we set aside its findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. "A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it." *Id*. A judgment is clearly erroneous only if the legal conclusions drawn by the trial court are not supported by its findings of fact or the conclusions do not support the judgment. *Id*.

Father does not specifically contest the accuracy of the trial court's factual findings. Therefore, we need only determine whether the findings support the conclusions. Father

7

challenges three conclusions, two of which relate to the requirements mentioned in Indiana Code Section 31-35-2-4(b)(2)(B). Because subparagraph (B) is written in the disjunctive, DCS was required to establish only one of those requirements. *See*, *e.g.*, *In re I.A.*, 903 N.E.2d 146, 153 (Ind. Ct. App. 2009). For the same reason, we must address only one of Father's arguments regarding those requirements.

Father's argument regarding whether the continuation of the parent-child relationship poses a threat to K.T.'s well-being reads in pertinent part as follows:

> Even the foster mother testified that [Father] had always displayed decency and respect toward her. Moreover, it can be deduced from the foster mother's testimony that the child's continued interaction and involvement with [Father] would not only be beneficial to [K.T.] but also very likely. Moreover, the foster mother intimated that she would even facilitate such interaction. A reasonable conclusion that this projected continued interaction between [Father] and [K.T.] would not result in harm to [K.T.] and would arguably benefit [K.T.].
>
> The trial court seemed to merely quantify [Father's] interaction with [K.T.] and discounted the quality of [Father's] interaction with [K.T.]. There was no other evidence to support that [Father] either had previously put [K.T.] in harm's way or any to support that [Father] had the propensity to do so.

Appellant's Br. at 13.

Father's argument disregards the trial court's uncontested findings regarding his "sporadic" visitation with K.T. and his lack of interest in K.T. during those visits. Father's argument also disregards his "sporadic" submission to random drug screens, his positive drug test results, his lack of involvement regarding K.T.'s medical condition, and his failure to make himself available for home visits and services. "The trial court need not wait until the child is irreversibly harmed such that [his] physical, mental, and social development is

permanently impaired before terminating the parent-child relationship." *In re A.B.*, 887 N.E.2d 158, 167 (Ind. Ct. App. 2008). Based on the foregoing, we cannot conclude that the trial court clearly erred in determining that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to K.T.'s well-being.

Father also challenges the trial court's conclusion that termination of his parental rights is in K.T.'s best interests. A determination of the best interests of the child should be based on the totality of the circumstances. *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied*. In making this determination, the trial court must subordinate the interests of the parent to those of the child involved. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*. "A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the [child]." *Lang*, 861 N.E.2d at 373. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *A.K.*, 924 N.E.2d at 224.

Here, DCS Family Case Manager Rebecca Bogucki opined that termination was in K.T.'s best interests because he "requires a stable, safe environment … and due to his medical condition, he does require constant care." Tr. at 51. Father does not challenge this assessment, and his meager argument fails to address the considerations mentioned above. Based on the totality of the circumstances, as documented by the trial court's undisputed

9

factual findings, and based on K.T.'s need for stability and permanency, we cannot conclude that the trial court clearly erred in determining that termination is in his best interests. Therefore, we affirm.

Affirmed.

MAY, J., and BROWN, J., concur.