## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 21 2018, 8:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joshua D. Hershberger
Crain Schuette Attorneys
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of L.D.C. & J.C. (Children) and M.C. (Mother);

M.C. (Mother),

*Appellant-Defendant,*

v.

The Indiana Department of Child Services,

*Appellee-Plaintiff*

March 21, 2018

Court of Appeals Case No. 72A01-1709-JT-2204

Appeal from the Scott Circuit Court

The Honorable Jason Mount, Judge

Trial Court Cause No. 72C01-1612-JT-15 72C01-1612-JT-16

**May, Judge.**

[1]     M.C. ("Mother") appeals the termination of her parental rights to L.D.C. and J.C. (collectively, "Children"). She challenges a number of the trial court's findings and argues the trial court's findings do not support its conclusions there was a reasonable probability the conditions that resulted in Children's removal would not be remedied and termination was in Children's best interests. We affirm.

## Facts and Procedural History

[2]     Mother and L.C. ("Father")[1] are the birth parents of L.D.C. and J.C., born March 2, 2008, and February 2, 2009, respectively. In September 2013, Mother, Father, Children, and two older siblings, K.K.[2] and Ja.C.,[3] were traveling in a camper when the camper broke down in Scott County and was towed to a campground. On September 14, 2013, police were dispatched to the campground to address domestic violence between Mother and Father. Police arrested Mother on outstanding warrants in Benton and Jasper counties. Police arrested Father on the allegation the camper the family was using was stolen. The Department of Child Services ("DCS") removed Children and their older

---

[1] Father's parental rights to Children were terminated in December 2016, and he does not participate in this appeal.

[2] K.K.'s father received custody of K.K. after her removal from Mother's care, and she lived with him in California at the time the termination hearing.

[3] Ja.C. had been placed in a facility at the time of the termination hearing.

siblings from Mother and Father's care because the family was homeless and both parents had been arrested.

[3] On September 16, 2013, DCS filed petitions as to L.D.C. and J.C., alleging each was a Child in Need of Services ("CHINS"). On October 25, 2013, Mother admitted Children were CHINS based on the family's homelessness and her incarceration. On November 25, 2013, the trial court entered a dispositional decree ordering Mother to participate in services, complete a substance abuse assessment and any recommendations therefrom; submit to random drug screening; complete a parental assessment and any recommendations therefrom; complete domestic violence services; maintain stable housing and income; visit with Children; and refrain from engaging in criminal activity.

[4] Mother was released from incarceration on May 18, 2014. During the Summer of 2014, Children were placed with paternal grandmother, where they remained for the rest of the proceedings. From May 2014 to July 2015, Mother and Children participated in therapy and visitation. In July 2015, Mother self-medicated with synthetic marijuana because she could not afford medication to treat an ulcer. Despite this admission, services and visitation continued with a goal of reunification.

[5] From November 2015 to May 2016, Mother continued to comply with services and visit regularly with Children. During that time, Mother tested positive for synthetic marijuana three times and failed to report for fourteen drug screens.

At a May 2016 periodic case review hearing, the trial court ordered Mother to undergo a hair follicle drug test. Mother did not submit to that test, nor did she submit to any drug screens between May 2016 and October 2016.

[6] In September 2016, Mother accepted a ride from two strangers who threatened to beat and rape her. Mother was using heroin during this time, and during an October 2016 visit with Children, Mother fell asleep while carving a pumpkin with Children. On October 13, 2016, police arrested Mother for possession of a syringe. On December 9, 2016, DCS filed petitions to terminate Mother's parental rights to Children.

[7] Mother was temporarily released from incarceration on December 20, 2016, and entered an inpatient rehabilitation program in Chicago. After Mother's successful completion of the program, she returned to the Newton County Jail until her release in February 2017. Between February 2017 and July 2017, Mother was incarcerated two more times in two other counties. In the same time period, Mother completed two drug screens, which were negative, but missed twenty-seven drug screens.

[8] On February 16, 2017, and July 27, 2017, the trial court held hearings on the termination petitions. Mother presented evidence she started working three days prior to the July hearing and lived with a friend who had room for the Children, though a portion of the house was uninhabitable due to a leak in the roof. The DCS Family Case Manager ("FCM") and the Court Appointed Special Advocate ("CASA") testified to Mother's drug use, Mother's lack of

stable housing and employment, and Children's stability in placement with paternal grandmother. On August 29, 2017, the trial court issued an order terminating Mother's parental rights to Children.

# Discussion and Decision

[9] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[10] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id*. at 836.

## Finding Regarding Dismissal of the Petition

[11]   As part of the findings in the order for termination[4] of Mother's parental rights, the trial court stated, "There exist no factors in I.C. 31-24-2-4.5(d)[5] that would require or be the basis for a dismissal of the petition." (App. Vol. II at 15) (footnote added). Mother argues this finding is clearly erroneous because it "omits the fact that [Children] have, since the summer of 2014, been in the care of their paternal grandmother, a 'relative' under IC. 31-9-2-107(c). Therefore, this factor could be the basis for the dismissal of this petition." (Br. of Appellant at 23.) We disagree.

[12]   Regarding DCS's requirements when filing a petition to terminate parental rights, Indiana Code section 31-35-2-4(b)(3) dictates:

> If the department intends to file a motion to dismiss under section 4.5 of this chapter, the petition must indicate whether at least one (1) of the factors listed in section 4.5(d)(1) through 4.5 (d)(3) of this chapter applies and specify each factor that would apply as the basis for filing a motion to dismiss the petition.

Indiana Code section 31-35-2-4.5(d) states, relevant to this case:

---

[4] The trial court entered one order for both Children.

[5] This citation is a scrivener's error, as it should read, I.C. 31-35-2-4.5(d), which is the correct citation for the statute regarding dismissal of a termination petition.

A person described in section 4(a) of this chapter[6] may file a motion to dismiss the petition to terminate the parent-child relationship if any of the following circumstances apply:

(1) That the current case plan prepared by or under the supervision of the department or the probation department under IC 31-34-15, IC 31-37-19-1.5, or IC 31-37-22-4.5 has documented a compelling reason, based on facts and circumstances stated in the petition or motion, for concluding that filing, or proceeding to a final determination of, a petition to terminate the parent-child relationship is not in the best interests of the child. A compelling reason may include the fact that the child is being cared for by a custodian who is a relative (as defined in IC 31-9-2-107(c)).

(footnote added).

[13]   "DCS is not required as a matter of law to dismiss a petition to terminate where the child is placed with a relative." *In re G.H.*, 906 N.E.2d 248, 252 (Ind. Ct. App. 2009). Additionally, we have held it harmless error when DCS does not file a motion to dismiss based on the fact the child is in relative placement when other factors support termination of the parent's rights to the child. *In re Involuntary Termination of Parent-Child Relationship of Kay.L.*, 867 N.E.2d 236, 241 (Ind. Ct. App. 2007). As we will discuss *infra*, DCS presented sufficient evidence to support the findings and the findings supported the conclusions

---

[6] A person described in Indiana Code section 31-35-2-4(a) is one or more of the following: "(1) The attorney for the department. (2) The child's court appointed special advocate. (3) The child's guardian ad litem."

used by the trial court to terminate Mother's rights to Children. Thus, any error in declaring there existed no factors that could justify dismissal of the petition under Indiana Code section 31-35-2-4.5(d) was, at most, harmless. *See Matter of A.C.B.*, 598 N.E.2d 570, 573-4 (Ind. Ct. App. 1992) (Trial court's erroneous finding including language regarding father's sale of illegal drugs was "harmless when considered in conjunction with the other evidence presented."). DCS was not required to dismiss the petition. *See G.H.*, 906 N.E.2d at 252.

## Evidence, Findings, and Conclusions Regarding Termination

[14] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[15] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

### Reasonable Probability Conditions Would Not Be Remedied

[16] The trial court must judge a parent's fitness to care for the child at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke Cnty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*.

[17] When assessing a parent's fitness to care for a child, the trial court should view the parents as of the time of the termination hearing and take into account the changes that have occurred during the proceedings. *In re C.C.*, 788 N.E.2d 847,

854 (Ind. Ct. App. 2003), *trans. denied*. However, the trial court must also "evaluat[e] the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of [a] child." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*.

[18] Mother challenges the trial court's finding that "she failed to appear or was unavailable for 27 tests for controlled substances." (App. Vol. II at 18.) She argues the trial court did not acknowledge that she missed those drug screens because she was "hospitalized and incarcerated during part of this time, . . . [and there was a] difficulty of communication with DCS and the complication of geographical distance." (Br. of Appellant at 24.) Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses).

[19] Mother also challenged the trial court's Finding 30, which states:

> 30. The following day, October 13, 2016, Mother was arrested for possession of a syringe in Benton County, Indiana. Following that arrest, Mother was incarcerated until December 20, 2016 before participating in an impatient [sic] rehab program until January 17, 2017. Thereafter Mother returned to jail for a short period of time and then has had no less than six changes of residence with a stay at the Kentland Motel, another hospitalization, a short time with friends in Illinois, short incarcerations in Lake and Benton Counties and living with friends as she testified to at the hearing of July 27, 2017.

(App. Vol. II at 18.) Mother argues the finding is "clearly erroneous because it omits uncontroverted testimony about Mother's change in residences." (Br. of Appellant at 24.) Mother contends the trial court did not consider the fact she maintained a residence at the same address for eight months prior to October 2016, and that, but for her assault in September 2016, "Mother probably would have remained at the Kentland Hotel, contemplated a move to Milford and settled at [an address] in Kentland, Indiana for a total of two to three moves." (*Id.*) Further, Mother asserts, "[b]eing hospitalized by a vicious assault should not be counted as nomadic behavior or characterized as 'another hospitalization.'" (*Id.*) Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses). Even if we were to agree with Mother that her hospitalization when she was assaulted should not be included as a change of residence that demonstrates her "nomadic behavior," Mother does not challenge the trial court's finding that between October 2016 and July 2017, Mother resided in Benton County Jail, at inpatient rehab, with friends in Illinois, in Lake County Jail, and with friends in Indiana, which is at least five locations in ten months. The court's finding is supported by the evidence.

[20] Additionally, Mother challenges Finding 33, which states:

> 33. The history of these Children has been prior DCS involvement with the filing of child in need of services actions in Benton County. Ongoing involvement by Mother in the criminal justice system and the use of controlled substances illegally. [sic]

> Mother has been unable to maintain employment and housing in which to host her Children. Efforts at family therapy, while for a short period proved hopeful, have not been successful in dealing with Mother's emotional and mental health issues and substance issues to any degree of consistency to cause the Court to believe that there is hope that conditions that prompted the removal of the [C]hildren can be corrected.

(App. Vol. II at 18.) Mother argues the trial court's finding is not supported by the evidence because she had employment during the proceedings when she was not incarcerated.

[21] During the termination hearing on July 27, 2017, Mother testified had been employed by Vanguard National Trailers since July 24, 2017. She also testified she worked at Lyons Production Incorporated for "a few months," (Tr. Vol. II at 138), and at Mexico Lindo for four years. Mother testified she lost the job at Lyons when she was hospitalized. Mother offers no case law to indicate how this sporadic record of employment does not support the trial court's finding that she was "unable to maintain employment[.]" (App. Vol. II at 18.) Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses).

[22] Except for those discussed *supra*, Mother does not challenge other findings related to the trial court's conclusion that there was a reasonable probability that the conditions that resulted in Children's removal would not be remedied. Therefore, those unchallenged findings stand proven. *See Madlem v. Arko*, 592

N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."). Thus we turn to Mother's challenges to the court's conclusions.

[23] Mother challenges the trial court's Conclusion 12,[7] which states:

> 12. By clear and convincing evidence the allegations of the Petition concerning the Mother and Father are true in that there is a reasonable probability that the conditions that resulted in the removal of the Children or prevent reunification with the Children will not be remedied[.]

(App. Vol. II at 15.)

[24] Regarding whether the conditions that resulted in Children's removal would not be remedied, the trial court made unchallenged findings noting the family was homeless, as they were "traveling in a camper" at the time Children were removed from Mother's care. (App. Vol. II at 15.) At the campground where their trailer was towed, police were called to address domestic violence involving Mother and Father, and Mother was arrested on an outstanding warrant. Father was later arrested, leaving Children homeless and without someone to care for them. These were the conditions that led to the Children being removed from Mother's care.

---

[7] The trial court later reiterates this language in Conclusion 23. In that conclusion, the trial court states: "When viewed in their totality, the Court finds that the DCS has proved by clear and convincing evidence that there is a reasonable probability that the circumstances that led to the removal of the Children will not be remedied[.]" (App. Vol. II at 18.) Mother does not challenge Conclusion 23.

[25]     Mother admitted Children were CHINS based on her incarceration and the family's homelessness. Since that admission, Mother used illegal drugs on multiple occasions and did not complete services as ordered by the court. The trial court noted Mother visited Children while under the influence of drugs and fell asleep while carving a pumpkin. Mother did not maintain stable housing, as she moved between multiple residences when she was not incarcerated or hospitalized.

Mother's assertion that she had "stable housing, had cleared up all criminal offenses and had successfully completed an inpatient drug rehabilitation program," (Br. of Appellant at 23-4), ignores her history of instability and dangerous life choices. Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses). The trial court's findings support its conclusion there was a reasonable probability that conditions under which Children were removed from Parents' care would not be remedied.[8] *See In re J.T.*, 742 N.E.2d

---

[8] In addition to her contentions that DCS did not present sufficient evidence to support the findings and the findings did not support the trial court's conclusion that there was a reasonable probability the conditions that resulted in Children's removal would not be remedied, Mother argues "the Court did not specifically point out how the parent-child relationship would pose a threat to the well-being of the children, and DCS did not present specific evidence on this point." (Br. of Appellant at 24.) DCS does not have to prove both "reasonable probability" and "threat" because Ind. Code § 31-35-2-4(b)(2)(B) is written in the disjunctive, such that DCS must prove either by clear and convincing evidence. Because the findings support the conclusion there was a reasonable probability the conditions leading to Children's removal would not be remedied, we need not address whether the findings also support a conclusion that the continuation of the parent-child relationship posed a threat to Children's well-being. *See In re L.S.* 717 N.E.2d 209 (because Ind. Code §31-35-2-4 (b)(2)(B) is written in the disjunctive, court needs to find only one requirement to terminate parental rights).

509, 512 (Ind. Ct. App. 2001) (While the trial court must consider the improvement made by a parent at the time of the termination hearing, it must also "evaluat[e] the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of [a] child."), *trans. denied*.

### Best Interests of Children

[26] In determining what is in Children's best interests, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Children's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[27] Mother challenges Finding 34, which states:

> 34. The reports and the testimony of the CASA [Court Appointed Special Advocate] are received by the Court. The CASA recommends termination of the parent child relationship. While the interaction between CASA and Mother has been limited, the limitation does not discredit the observation of CASA of the condition of the [C]hildren in the placement of the paternal grandmother. The CASA and DCS note that the Children are well cared for and loved in the current placement.

The Children are progressing in their therapy and the paternal grandmother remains the only person who has provided the Children with any type of a stable home. They are happy and feel secure with [paternal grandmother].

(App. Vol. II at 18.) Mother argues the CASA in the case "received the case file less than a month before the termination hearing, never spoke to Mother prior to making a recommendation for termination and never visited Mother's apartment." (Br. of Appellant at 26.)

In support of her argument, Mother cites *In re A.S.*, 17 N.E.3d 994 (Ind. Ct. App. 2014), *trans. denied*, where we held, when determining the best interests of the child, "the trial court is required to look beyond the factors identified by DCS and to consider the totality of the evidence." *Id*. at 1005. Mother asserts, based thereon, "[a] finding concerning the best interest of the children requires consideration of the totality of the evidence, not just the case file and the condition of the children in their adoptive placement." (Br. of Appellant at 26.) Mother is correct, and the trial court considered the totality of the evidence outside of the CASA's testimony. Regarding the Children's best interests, the trial court found:

> 16. After removal, the four children, including [L.D.C. and J.C.], related witnessing domestic violence between Mother and Father and also related that the Father had been physically abusive with them and used inappropriate discipline.
>
> * * * * *

20. During this period of time [the CHINS proceedings] the Children were also evaluated and there was great concern for the emotional state of [Children] to the extent that there was no direct unsupervised contact allowed between the Children and their parents. The review order of the hearing of March 14, 2014 identifies the severity of the condition of the Children and their past experiences at that time. . . .

21. In the summer of 2014 the Children were placed with [paternal grandmother] and have been in that placement continuously since that time. Further the grandmother has previously in past years been appointed and served as guardian for the Children under a Newton County guardianship and has served as caregiver for the Children throughout their lives.

22. The Children were previously the subject of child in need of services cases in Newton County (J.C. twice in 2008 and 2009 and L.D.C. once in 2009) where issues of exposure to conditions similar to the events and family conditions that necessitated the present CHINS cases. The 2009 case involved the presence of drugs at birth of L.D.C. with the [C]hildren placed with [paternal grandmother] from August, 2008 until February, 2009 after a trial home visit was commence [sic] with the Mother, the Benton County case was closed on May, 2009. [sic] Mother participated in therapy, drug screening and supervised visitation. Mother also divorced the Father the first time during this time period.

23. Services were put in place for the Children and for the Mother following her release from incarceration in May, 2015. The findings were that the Children had been traumatized by the Father and by the exposure to the conflict within the family to the extent that the term "terrorized" was used to describe the degree of conflict experienced by the Children.

* * * * *

29.  On October 12, 2016 the Mother visited with the Children and was under the influence of a controlled substance.  Her visit that day included an activity of carving a Halloween jack-o-lantern.  Mother, while plunging a knife into a pumpkin, feel [sic] asleep during that activity.  This event occurred in front of the Children and caused great concern and distress to the Children.

(App. Vol. II at 16-18.)  The FCM testified, "[paternal grandmother] can meet [Children's] needs.  She's had them in her care for several years and they are doing well in her care."  (Tr. Vol. II at 84.)  The FCM further testified the last unsupervised visit Mother had with Children was Halloween 2015.

[29]  Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do.  *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses).  We conclude the trial court's findings support its conclusion that termination was in the Children's best interests.  *See In re D.L.*, 814 N.E.2d 1022, 1030 (Ind. Ct. App. 2004) (termination was in child's best interests based on Mother's failure to maintain a drug-free lifestyle and maintain a stable source of income; child needed permanency and was doing well in foster care), *trans. denied*.

# Conclusion

[30]  We conclude any error in the trial court's finding regarding Indiana Code section 31-35-2-4.5(d) was harmless because there existed additional sufficient evidence and findings to support termination of Mother's parental rights to Children. Additionally, Mother's arguments regarding specific findings are

invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. Finally, the trial court's unchallenged findings support its conclusions there was a reasonable probability the conditions that resulted in Children's removal would not be remedied and termination was in Children's best interests. Accordingly, we affirm.

[31] Affirmed.

Vaidik, C.J., and Altice, J., concur.