**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 27 2012, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL B. TROEMEL**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**CRAIG JONES**
Indiana Department of Child Services
Lafayette, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION | ) | |
| OF THE PARENT-CHILD RELATIONSHIP OF: | ) | |
|   R.D. (Minor Child), | ) | |
|       and | ) | |
|   M.D. (Father), | ) | |
| | ) | |
|      Appellant-Respondent, | ) | |
| | ) | |
|         vs. | ) | No.  79A02-1205-JT-394 |
| | ) | |
| THE INDIANA DEPARTMENT OF | ) | |
| CHILD SERVICES, | ) | |
| | ) | |
|      Appellee-Petitioner. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT III
The Honorable Loretta H. Rush, Judge
The Honorable Faith A. Graham, Magistrate
Cause No. 79D03-1201-JT-23

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this termination of parental rights appeal, the evidence demonstrated that Father has an extensive criminal history relating to substance abuse and has been diagnosed with depression and borderline personality disorder. Father occasionally used drugs in front of his now four-year-old daughter, R.D., and attempts at counseling and drug rehabilitation have been unsuccessful. Father is incarcerated and will not be released from prison for nearly four years.

Father was unable to participate in various parenting services and programs offered by the Department of Child Services (DCS) because of his incarceration. The caseworker, court appointed special advocate (CASA), and even R.D.'s mother (Mother), testified that terminating Father's parental rights in R.D. is in the child's best interests. Accordingly, we affirm the trial court's decision to terminate Father's parental rights.

FACTS

R.D. was born to Mother and Father on August 1, 2007. R.D. was born during the pendency of another Child In Need of Services (CHINS) proceeding that involved L.B., a different child of Mother. During the pendency of those earlier proceedings, Mother, her boyfriend, and L.B. all tested positive for cocaine.

On March 27, 2011, the DCS received a report that Mother and Father had been arrested for crimes relating to the manufacture, use, and possession of methamphetamine.

Father was on probation at the time for forgery involving prescription medication. Following the arrest, Father tested positive for methamphetamine, morphine, and heroin, and Mother tested positive for methamphetamine and morphine. Father was later sentenced for the probation violation and on the new charges. In short, Father will not be released from prison for three or four years.

R.D. and Mother's other child, L.B., were placed in protective custody following the filing of a CHINS petition. Assessments were conducted at the jail for both parents. Although a variety of parenting and counseling services were offered to both parents through the DCS, they were unable to participate in and complete them because of their continued incarceration.

At the termination hearing on April 3, 2012, Father acknowledged that he has a lengthy criminal history related to his issues with substance abuse. Father started using marijuana and alcohol in his teens, and drugs became a "real problem" by the time that he turned nineteen. Tr. p. 26.

Father was charged as a delinquent for committing burglary that occurred while he was under the influence of marijuana. His criminal mischief conviction was the result of behavior that he exhibited while intoxicated. Father admits that he had used "cocaine, heroin, methamphetamine, and abused prescription medications." Appellant's Br. p. 6. Although Father attended college for several years, he was not able to obtain a degree or maintain steady employment because of his substance abuse.

The evidence also showed that Mother and Father regularly used drugs together between 2008 and their arrests just prior to the commencement of the CHINS proceeding. Mother testified that approximately six months before their arrests, she and Father were using heroin on a daily basis, often traveling to Chicago with the children to purchase the drugs. Additionally, Father used drugs in front of the children. Just months before the CHINS case was filed, Mother and Father started using methamphetamine, sometimes together with heroin.

Father participated in some substance abuse treatment programs, but he always reverted to drug use. Father was ordered to complete substance abuse classes after a 1995 conviction, and again following his entry into drug court in 2006. Father attended substance abuse and/or individual counseling services from 2007 to 2011. At times, Father participated in a twelve-step program, and he completed the "Thinking for a Change" course in 2009. Ex. 9. Although Father claimed that he could not afford substance abuse counseling and treatment, he acknowledged that his drug habit was more expensive than treatment and rehabilitation.

Although Father was aware of several free substance abuse programs, he did not take advantage of them or reach out to family members for support or assistance. Father admitted that his treatment had generally been ineffective and that he often entered treatment with the intent to "sabotage and manipulate and shift everything toward where it suits [him] not allowing [himself] to be treated." Tr. p. 100.

4

The evidence also demonstrated that Father has been diagnosed with anxiety, depression, borderline personality disorder, and post-traumatic stress disorder. These illnesses have persisted for nearly fourteen years.

Father's assessments were conducted at the jail, and he participated in supervised telephone contact with R.D. during that time. However, Father was largely unable to participate in the various parenting services because he was incarcerated from the initiation of the CHINS case through the evidentiary hearing on the termination petition. Although there was evidence that Father participated in services during the first CHINS hearing regarding L.B., he did not change his behavior.

Mother, who voluntarily relinquished her parental rights in R.D., testified at length that she believed termination and adoption by R.D.'s relatives were in R.D.'s best interests because of the drug abuse and the harm that had resulted to R.D. over the years. The CASA, Jennifer Thilges, also supported termination of the parent-child relationship between Father and R.D. and agreed with the plan of adoption. Thilges testified that even if the parents could be released from jail on the day of the evidentiary hearing, they "would have many months of hard work ahead of them." Ex. 14. Because of Father's drug addiction, Thilges thought that the time it would take for him to recover "would not be fair" to R.D. Id.

R.D. has bonded with her grandparents and extended family and is doing well in their care. Thilges believed that R.D. requires permanency in her life. The DCS family case manager, Keith Luebcke, testified that termination is in R.D.'s best interest because

5

of Father's history of criminal behavior, drug use—especially his use of drugs around R.D.—and his reliance on others to support R.D.'s needs.

On April 25, 2012, the juvenile court entered findings of fact and conclusions of law, terminating Father's parental rights as to R.D. In particular, the juvenile court noted Father's various medical diagnoses, his substance abuse and criminal history associated with that abuse, his inability to maintain employment because of his addictions, and his many unsuccessful attempts at counseling and treatment. The juvenile court observed that Father's investment in substance abuse treatment has been "marginal." Appellant's App. p. 4. The juvenile court concluded that Father has historically placed his own needs above those of R.D. and that his behavior created substantial threats to R.D.'s well-being.

The juvenile court specifically observed:

Although Mother and Father love these children, neither has the current ability to meet the children's needs. It is not safe for the children to be in the care of Mother or Father. The long-standing history of substance abuse displayed by these parents continues. Services have been previously offered and nothing is singularly different in today's circumstances since the time of removal. To continue the parent-child relationships would be detrimental to the children. The children need permanency now.

Id. at 5.

In light of this evidence, the juvenile court determined that there was a reasonable probability that the conditions that resulted in the removal of the children from the parents' care or the reasons for the continued placement outside the home would not be remedied. The juvenile court also concluded that a continuation of the parent-child

relationship poses a threat to R.D.'s well-being and that termination of Father's parental rights is in R.D.'s best interest. Father now appeals.[1]

DISCUSSION AND DECISION

I. Standard of Review

We initially observe that the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to raise their children. Troxel v. Granville, 530 U.S. 57, 65 (2000); Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). But parental rights are not absolute and must be subordinated to the child's interest in determining the proper disposition of a petition to terminate parental rights. In re D.D., 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004). Thus, "parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. at 265. The purpose of terminating parental rights is not to punish parents but to protect their children. In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004).

When reviewing the termination of parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009). Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment below. Id. Here, the juvenile court made specific findings of fact and conclusions of law in its order terminating Father's parental rights.

---

[1] Mother consented to the termination of her parent-child relationship with R.D. on April 3, 2012. Thus, she is not a party to this appeal.

7

Where the juvenile court enters specific findings and conclusions, we apply a two-tiered standard of review. Bester, 839 N.E.2d at 147. We first determine whether the evidence supports the findings, and then whether the findings support the judgment. Id. We will not set aside the juvenile court's judgment unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). A judgment is clearly erroneous when the evidence does not support the findings, or the findings do not support the result. In re S.F., 883 N.E.2d 830, 834 (Ind. Ct. App. 2008).

The elements that the DCS must allege and prove by clear and convincing evidence in order to effect the termination of parental rights are set forth in Indiana Code section 3l–35–2–4(b)(2), which provides

(A) that one (1) of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> (ii) A court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>
> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

8

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

. . .

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

I.C. § 31–35–2–4(b)(2).

We note that Indiana Code section 3l–35–2–4(b)(2)(B) is written in the disjunctive, which requires that only one of the sub-elements, under subsection (B), be proven true by clear and convincing evidence. In re L.S., 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

## II. Father's Claims

### A. Conditions Remedied

Father contends that the termination of parental rights order must be set aside because the DCS failed to adequately establish that the conditions resulting in R.D.'s removal would not be remedied. Specifically, Father maintains that because of his continued incarceration, he was unable to avail himself of the services provided by the DCS. Because Father asserts that he was capable of benefiting from those services, had he not been in jail, he claims that the trial court erred in concluding that the conditions resulting in the removal would not be remedied.

9

When determining whether the conditions that led to a child's removal will not be remedied, the juvenile court must judge a parent's fitness to care for his or her child at the time of the termination hearing. In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). However, the juvenile court's inquiry must also evaluate a parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. Id.

The juvenile court may properly consider a parent's history of neglect, failure to provide support, lack of adequate housing, and lack of employment, among other things. McBride v. Monroe Cnty. OFC, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). The juvenile court may also consider the services that the DCS has offered to a parent and the response to those services. In re M.S., 898 N.E.2d 307, 311 (Ind. Ct. App. 2008).

A parent's history of incarceration and the effects upon the children is also a relevant consideration. In re A.A.C., 682 N.E.2d at 545. Individuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children. In re A.C.B., 598 N.E.2d 570, 572 (Ind. Ct. App. 1992). Finally, the DCS is not required to rule out all possibilities of change. Rather, it need establish "only that there is a reasonable probability that the parent's behavior will not change." In re Kay L., 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

In this case, the evidence demonstrated that Father has a lengthy history of substance abuse that escalated prior to the CHINS case. Tr. p. 34-35. He also has a long criminal history related to his substance abuse that began when he was a juvenile. There were several failed attempts at treatment, and Father did not take advantage of substance

treatment opportunities when he could do so. Id. at 28, 52, 77, 106. Although Father participated in services during a prior CHINS proceeding that involved a child that was not his, he did not change his behavior. Father also continued to commit crimes to feed his drug habit while on probation, and he received a lengthy criminal sentence for which he will serve, at the very least, three to four additional years in the DOC, and that time will be followed by more probation. Id. at 20-21. Father has been incarcerated throughout the CHINS case and was not able to participate in services to work toward reunification with R.D. Father was still incarcerated at the time of the evidentiary hearing on the termination petition and was not able to care for R.D. Id.

As noted by the juvenile court, there is no evidence suggesting that Father's situation, which directly caused R.D.'s removal, will ever improve. Father's habitual pattern of conduct points to the likelihood that, even when he is released from prison, Father will return to drug use and criminal activity.

Although we acknowledge that Father has made a few efforts to participate in some of the services, the juvenile court nonetheless found that the evidence was clear and convincing that he did not sufficiently benefit from those services. It was also reasonable, based on the evidence, for the juvenile court to conclude that Father cannot adequately parent R.D.

In sum, it is apparent that the juvenile court properly considered Father's pattern of conduct to determine the likelihood of continued interference with his parenting ability. From the evidence presented, the juvenile court reasonably concluded that there

11

was a reasonable probability that the conditions that resulted in R.D.'s removal would not be remedied. In effect, Father's claims amount to an invitation to reweigh the evidence—an invitation that we decline.[2]

## B. Best Interests

Father also argues that the evidence was insufficient to support the juvenile court's conclusion that terminating his parental rights was in R.D.'s best interest. Specifically, Father maintains that the termination order must be set aside because the evidence demonstrated that R.D. had bonded with him. Therefore, Father claims that breaking that bond is not in R.D.'s best interest.

In determining the best interests of a child, the juvenile court is required to look beyond the factors identified by the DCS and should consider the totality of the evidence. In re J.S., 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development are permanently impaired before terminating the parent-child relationship. In re A.A.C., 682 N.E.2d at 545. Recommendations of the case manager and the CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination of parental rights is in a child's best interests. J.S., 906 N.E.2d at 236. A parent's historical inability to provide a suitable environment along with the parent's

---

[2] As noted above, Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, we need not address Father's contention that the DCS failed to show that there was a reasonable probability that continuation of the parent-child relationship posed a threat to R.D. In re L.S., 717 N.E.2d at 209.

12

current inability to do the same supports a finding that termination of parental rights is in the child's best interest. Lang v. Starke Cnty. OFC, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007). The juvenile court may properly consider evidence of a parent's history of neglect, failure to provide support, and lack of adequate housing and employment. Matter of D.G., 702 N.E.2d 777, 779 (Ind. Ct. App. 1998).

As discussed above, the evidence demonstrates that R.D. is bonded with her grandparents and extended family, and is doing well. Ex. 14. Although the evidence might also support the determination that Father loves R.D., Father is unable to help, support, or care for her while he is incarcerated for several more years.

Thilges, the CASA in this case, the DCS family case manager, and Mother all testified that they believed termination of parental rights to be in R.D.'s best interests. Tr. p. 39, 69-71. These recommendations were based on Father's criminal history, his substance abuse, including his use of drugs around R.D., his reliance on others to provide for R.D., and the long period of time that R.D. would have to await Father's release from prison. Id. at 69-71.

In short, we cannot say that the juvenile court's determination that it was in R.D.'s best interest that Father's parental rights be terminated is clearly erroneous. Thus, we decline to set aside the termination order.

The judgment of the juvenile court is affirmed.

RILEY, J., and BARNES, J., concur.

13