In re The Matter of the TERMINATION OF the PARENT–CHILD RELATIONSHIP OF S.F. and J.F.

Michael Farley, Appellant,

v.

Allen County Child Services, Appellee.

No. 02A03–0707–JV–306.

Court of Appeals of Indiana.

April 2, 2008.

Thomas C. Allen, Fort Wayne, IN, Attorney for Appellant.

Robert J. Henke, Indiana Department of Child Services, Fort Wayne, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Michael Farley appeals the termination of his parental rights to his children, J.F. and S.F. We reverse and remand.

### Issue

Farley raises three issues. We address the dispositive issue, which we restate as whether Farley was denied due process when the trial court conducted an independent investigation and did not allow Farley an opportunity to respond.

### Facts

In 2005, J.F. and S.F. were found to be children in need of services ("CHINS") based on J.F. having scabies and lice and concerns regarding the children's living conditions. On July 18, 2006, the Allen County Department of Child Services ("DCS") filed a petition to terminate Farley's parental rights because Farley had allegedly failed to maintain suitable living conditions.

On December 11, 2006, and December 19, 2006,[1] a trial was held on the petition to

---

1. The December 19, 2006 trial was not re- corded. The trial court submitted a modified

terminate Farley's parental rights. On February 8, 2007, the trial court issued the following order:

> The Court, upon review of the record and evidence presented at trial, finds that additional investigation is required. The Court now orders that the Department of Child Services request an investigation of the parents' home by the Health Department and that the Health Department file a report of its findings with the Court by no later than February 23, 2007.

App. p. 188. Apparently, the Allen County Health Department ("Health Department") performed such an inspection and submitted a report to the trial court.

On April 9, 2007, the trial court terminated Farley's parental rights to J.F. and S.F. The termination order read in part:[2]

9. From the date of removal, September 28, 2005, until the date of the Termination of Parental Rights Trial the conditions remained to be:

i. The home was dirty to such an extent that it was unsanitary.

ii. There were areas in the home with missing drywall exposing insulation.

iii. There was a strong odor (later to be determined to be a combination of dog urine, dog feces and sewage from a broken sewer pipe in the wall[ ) ].

iv. The kitchen was filthy.

v. The bathroom was filthy.

\*　　\*　　\*　　\*　　\*　　\*

12. The father has a prior history of involvement with the Department of Child Services in Adams County and in Allen County.

13. The father's ability to recognize and correct potential danger to the child is exhibited by response to the existence of broken fence boards in the rear yard that had nails exposed.

14. The potential dangerous hazard was not removed when called to the attention of the parent but merely turned over.

15. There existed a hole in the ground adjacent to the front porch steps sufficiently large enough to pose a danger to a child playing in the yard.

16. The father failed to fill the hole but covered it with a sheet of glass, not correcting the danger but increasing it.

17. Services were offered to the father by the [DCS]. The father has failed to benefit from the services provided. The Court finds that the causes of removal will not be remedied.

18. Termination of parental rights is in the best interests of the child, [J.F.], in that the mother and the father have shown over the course of the related CHINS cause, and in the fact of a treatment plan or plans, and numerous specific services made available and/or provided, that said parents continue to be unable, refuse, or neglect to provide of the basic necessities of a

---

certified statement of the evidence that included a transcript of a December 7, 2006 trial involving J.F. and S.F.'s half-sister, D.D. The trial court stated the December 7, 2006 testimony was "in sum and substance" the same as the missing trial testimony. Appellee's App. Vol. II p. 2. For purposes of this appeal we will consider the evidence from the December 7, 2006 trial to be the same as the evidence from the December 19, 2006 trial.

2. The trial court issued separate orders for J.F. and S.F. They were substantially the same, and we cite the order relating to J.F.

suitable home for the raising of said child.

19. The [DCS] has a satisfactory plan for the care and treatment of the child, which is placement of the child for adoption.

**ADDENDUM:**

Because of the time delay between the trial and the Court's opportunity to review the record, the Court ordered an inspection of the home by the Allen County Department of Health. The report of the Department of Health reaffirmed the Court's finding that the home is in unsanitary conditions. The inspection report contains the following statements:

"The enclosed porch of this house contained a mattress, box springs, rolled carpeting, lamp, reclining chairs and several other articles pile on the porch floor or in disarray ... An overall inspection of the home revealed excessive clutter and general poor housekeeping. I saw a recently deposited dog stool on the living room carpet. This carpet was heavily stained but showed little wear ... The Kitchen sink was over filled with dirty dishes and the kitchen appliances and furnishings were in need of cleaning. The hallway landing displayed a cracked window pane and the hall ceiling had a large area of exposed lath board ... The bathroom sink was filthy and bedding was in the tub. The electrical receptacle above the tub had no cover plate nor did the receptacle have a ground fault interrupter for which to prevent shock or electrocution ... The downstairs smoke detector had no working battery nor was it mounted ... A bottom basement stair was broken and there were two golf ball sized holes in the foundation walls. A light fixture was hanging from the mounting base and the wiring was exposed ... This family has three dogs. In summary, the home was dirty from ceiling to floor and so cluttered as to impede normal movement. In the present condition, the home is a danger to the occupants as well as visitors or emergency personnel."

**CONCLUSIONS OF[ ]LAW**

The Court concludes that there is a reasonable probability that the conditions that resulted in the child's removal and the reasons for the placement of the child outside the home will not be remedied.

App. pp. 22–24 (ellipses in original). Farley appeals the termination of his parental rights.

### Analysis

Farley argues that his due process rights were violated by the trial court's consideration of the Health Department report after the trial. "When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." *Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 147 (Ind.2005). "We consider only the evidence and reasonable inferences that are most favorable to the judgment." *Id.* Where a trial court enters findings and conclusions granting a petition to terminate parental rights, we apply a two-tiered standard of review. *Id.* First, we determine whether the evidence supports the findings. *Id.* Then we determine whether the findings support the judgment. *Id.* We will set aside a judgment that is clearly erroneous. *Id.* A judgment is clearly erroneous when the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

A petition to terminate the parent-child relationship must allege:

(A) one (1) of the following exists:

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(ii) a court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind.Code § 31–35–2–4(b)(2).

▆▆▆ The DCS had the burden of proving these allegations by clear and convincing evidence. *See Bester,* 839 N.E.2d at 148. Clear and convincing evidence need not show that the continued custody of the parent is wholly inadequate for the child's very survival. *Id.* Instead, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development is threatened by the parent's custody. *Id.*

Farley asserts that the trial court's independent investigation approximately forty-five days after the conclusion of the trial violated his due process rights. He points out that after the trial court received the report no further proceedings were held and that he was not given an opportunity to cross-examine the Health Department inspector or to offer his own evidence contradicting the report.

▆▆▆ In addition to statutory protections, the Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. *See Lawson v. Marion County Office of Family & Children,* 835 N.E.2d 577, 579 (Ind. Ct.App.2005). When the DCS seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process. *Id.* at 580. Due process is described as the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* Due process turns on the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *Id.* "The balancing of these factors recognizes that although due process is not dependent on the underlying facts of the particular case, it is nevertheless 'flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (citations omitted).

As we have previously observed in termination cases, the private interests are substantial. *Id.*

In particular, the action concerns a parent's interest in the care, custody, and control of his children, which has been recognized as one of the most valued relationships in our culture. Moreover, it is well settled that the right to raise

one's children is an essential, basic right that is more precious than property rights. As such, a parent's interest in the accuracy and justice of the decision is commanding. . . .

*Id.* (citations omitted).

■■■ "On the other hand, the State's *parens patriae* interest in protecting the welfare of the children involved is also significant." *D.A. v. Monroe County Dep't. of Child Servs.*, 869 N.E.2d 501, 510 (Ind.Ct.App.2007). "Delays in the adjudication of a case impose significant costs upon the functions of the government as well as an intangible cost to the lives of the children involved." *Id.*

■■■ The remaining consideration, the risk of error created by the State's chosen procedure, does not weigh heavily in support of the trial court looking outside of the record to aid in its decision-making. First, at issue here is the trial court's procedure; not an improper action by the State. Further, Farley did not have an opportunity to view the report in its entirety,[3] let alone an opportunity to respond to it. A parent must be permitted to view the evidence used to support the termination of his or her parental rights and must be given an opportunity to respond to that evidence. *See* I.C. § 31–32–2–3(b) (entitling a parent to cross-examine witnesses, obtain evidence by compulsory process, and introduce evidence on his or her behalf); *Cannon v. State*, 866 N.E.2d 770, 773 (Ind.2007) ("The opportunity for all sides to be heard is at the heart of our adversarial system.").

Additionally, although the Health Department's inspection and report gave the trial court access to a third party's opinion regarding the condition of Farley's home after the trial, such actions are not permitted. *See In Re Guardianship of Garrard*, 624 N.E.2d 68, 69–70 (Ind.Ct.App.1993) (concluding that where the trial court pursued, received, and considered evidence outside the presence of the parties, a new trial was required). To hold otherwise would shift the burden of proof from the State to the parent and would call into question the impartiality of the trial court. Accordingly, the trial court's independent, off-the-record investigation and the failure to give Farley an opportunity to respond to the report created a high risk of error.

Focusing on the trial court's use of the word "addendum," the DCS argues that there is no indication that the trial court considered the Health Department's report "as substantive or dispositive evidence in reaching the conclusion to terminate." Appellee's Br. p. 26. The DCS also points out that because the report was never received into evidence and was not included in the trial court's file, the trial court might not have relied on it. Finally, the DCS contends that trial court's use of the word "reaffirmed" in the termination order shows that it had already made the decision to terminate Farley's parental rights prior to any consideration of the report.

We do not agree that the report was as innocuous as the DCS suggests. The trial court independently requested the inspection and extensively quoted from the report in its termination order. Further, in the trial court's February 8, 2007 order for the inspection, the trial court found "that additional investigation is required," implying that as the record stood, there was not sufficient evidence to support the termination of Farley's parental rights, or at

---

**3.** Both parties are in agreement that the Health Department's report was not received into evidence and is not in the trial court's file. Other than the trial court's references to the report in its April 9, 2007 termination order, we did not receive a copy of the report on appeal.

least the trial court was wavering regarding its decision. App. p. 188. Based on the lengths to which the trial court went to obtain the additional information and the references to such in the termination order, we cannot agree that the report was either insignificant or an afterthought. The trial court's consideration of a report that was generated through its independent investigation to which Farley was not given an opportunity to respond violated Farley's due process rights.

 The DCS also argues that Farley waived this issue because he did not object to the February 8, 2007 order, file a motion to correct error, or otherwise bring the alleged error to the trial court's attention. Assuming for the sake of argument that Farley had an obligation to object to the trial court's actions, we believe the trial court's actions amounted to fundamental error. "In order for this court to reverse based on fundamental error, the error must have been a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively." *In re Involuntary Termination of Parent–Child Relationship of B.R.,* 875 N.E.2d 369, 375 (Ind. Ct.App.2007), *trans. denied.* Here, not only did the trial court conduct an independent investigation, it did so without giving Farley an opportunity to respond. This is fundamental error.

 Further, we do not agree with the DCS that the consideration of the report was harmless error. Although there was overwhelming evidence that the house was unsuitable for children when the children were found to be CHINS and there were concerns about the suitability of the housing at time of the trial, there was also evidence that Farley had improved the conditions in the home.

 At issue here is the trial court's determination that the conditions that led to the children's removal would not be remedied. In determining whether the conditions will be remedied, the trial court first should determine what conditions led the State to place the child outside the home, and second if there is a reasonable probability that those conditions will be remedied. *In re C.C.,* 788 N.E.2d 847, 854 (Ind.Ct.App.2003), *trans. denied.* "When assessing a parent's fitness to care for a child, the trial court should view the parent as of the time of the termination hearing and take into account any evidence of changed conditions." *Id.* "However, the trial court should also take into account the parent's habitual patterns of conduct as a means of determining the probability of future detrimental behavior, as well as the services offered by [DCS] to the parent and the parent's response to those services." *In re K.S.,* 750 N.E.2d 832, 837 (Ind.Ct.App.2001).

Amos Norman, a former "restoration worker," testified that during his time with the family Farley's own hygiene improved "drastically." Tr. pp. 10, 15. Norman stated that although Farley had not "totally completed" the improvements to his home, there were "definite improvements." *Id.* at 17. Norman also testified that each time he did a walk-through, the condition of the house had improved. *See id.* at 33.

Elise Mandeville, a DCS employee, testified that when she saw the house at the end of October 2006, the living room was "cleaned," there was no trash or dirty bottles, the dining room was "organized," the kitchen continued to have a portion of the ceiling missing and was "still somewhat dirty." App. pp. 103, 116. She went on to state that there was no laundry upstairs and it was picked up. Regarding the bathroom, she testified that it had a hole in the wall "but there was no dirt

laundry or trash." *Id.* at 117. She stated that at the time of her last visit in October 2006, the home was structurally appropriate, that it smelled better, and that the defects were being repaired slowly.

As another example, Patricia Johnson, the children's count appointed special advocate ("CASA"), testified that when she visited the house on December 4, 2006, shortly before the trial:

> the living room furniture had been rearranged but there was still, you know, a lot of clutter. The carpet needed to be vacuumed. And I noticed, on this visit, part of the window sill in the living room has been chewed off from the dogs. The dining room appeared to be somewhat the same. The kitchen is still dirty. The stove is dirty. The kitchen sink is piled with dirty dishes. I asked where they kept their clean dishes and I was shown some open shelving area near a basement door, and noticed that Michael had patched that part of the ceiling that had previously been missing. I went upstairs. The bathroom toilet appeared to be clean. The bathtub, I don't know whether it's clean, or dirty I mean; or whether it's potted.... And the ceiling is still missing, its plaster in the upstairs. The glass was still on the ground by the steps and more glass was on the other side of the steps; that I hadn't noticed previously. The board outside, Michael had either removed the nails or pounded them over so that they weren't sticking up.

*Id.* at 127–28. When asked, "until your visit in December have you seen improvements in the condition of the home?" Johnson responded, "[m]inimally." *Id.* at 128.

Another case manager with the DCS, Suzan O'Connor, who saw the house on October 18, 2006, testified that in her opinion, the house was a "sanitary place to return a child." *Id.* at 135. O'Connor returned to the house on December 5, 2006, she testified that her only safety concern was a light fixture without a cover on it, with the light bulb exposed. O'Connor stated that a child could "safely" returned to the house. *Id.* at 137.

Here, the evidence, to varying degrees, showed that Farley was improving the condition of his home. There was a dispute as to whether the changes he had made prior to trial were sufficient to render the home suitable for the children. Accordingly, we cannot say with confidence that the trial court's review of Health Department's report was harmless.

This is especially true when considering the February 8, 2006, order, which stated, "the Court, upon review of the record and evidence presented at trial, finds that additional investigation is required." *Id.* at 188. Had the State met its burden of proving by clear and convincing evidence that the conditions that led to the children's removal had not been remedied, additional investigation by the trial court would have been unnecessary. With this in mind, the trial court's subsequent investigation and Farley's lack of opportunity to respond to the report was not harmless error. We, therefore, reverse the entry of judgment terminating Father's parental rights and remand with instructions to hold a proper final termination hearing. *See D.A.,* 869 N.E.2d at 512.[4]

### Conclusion

Because of the trial court's independent investigation and the trial court's failure to

---

4. Because of our holding today, we need not address Farley's arguments regarding the sufficiency of the evidence.

provide Farley an opportunity to respond to the Health Department's report, Farley was denied due process. We reverse and remand with instructions for the trial court to conduct another trial.

Reversed and remanded.

SHARPNACK, J., and VAIDIK, J., concur.