**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 24 2014, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEIDRE L. MONROE**
Lake Superior Court, Juvenile Division
Public Defender's Office
Gary, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) ) |
| C.M. & J.H. (Minor Children) | ) ) |
| and | ) ) |
| C.M. (Mother), | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 45A04-1309-JT-456 ) |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas Webber, Sr., Judge Pro Tempore
Cause Nos. 45D06-1106-JT-165 and 45D06-1106-JT-163

**February 24, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this termination of parental rights appeal, the evidence established that C.M. (Mother) was unwilling to take action to treat her mental illness and, therefore, unable and unwilling to provide the necessary care to her two children, C.M., born on July 18, 2003, and J.H., born on September 23, 2005 (collectively, the Children). Mother contends that the Indiana Department of Child Services (DCS) failed to prove, by clear and convincing evidence, that the conditions that led to the removal of the children would not be remedied and that termination was in the Children's best interest. In particular, Mother argued that the juvenile court erred when it relied on the testimony of a psychologist that had only met Mother once. We find that Mother's arguments are a request to impermissibly reweigh the evidence, which this Court will not do. Accordingly, we affirm the juvenile court's decisions to terminate Mother's parental rights.

FACTS

On December 9, 2009, the DCS received a report from the East Chicago Indiana Police Department, who had been called to Mother's home concerning a landlord/tenant dispute. The responding officers found that Mother was behaving erratically and were concerned that the children appeared to be hungry. That same day, the DCS conducted

its assessment and found that: 1) Mother appeared confused and disoriented; 2) Mother could not give demographic information about the Children, including dates of birth or first and last names; 3) Mother had not paid rent and had to vacate her apartment within twenty-four hours and did not know where she would stay; 4) Mother was hospitalized in 2008 and the Children were removed from Mother's care; and 5) Mother did not take her prescribed medicine.

The Children told the DCS family case manager that Mother was afraid of the light bulbs in the apartment because she believed that cameras were hidden inside the light bulbs, that Mother thinks the Children are the enemy and calls them bad robots, and that she believes J.H. has a chip in his ear and tells J.H. not to listen to the chip. The Children also told the family case manager that Mother is better when she takes her medication. There was no food in the house, and the Children stated that there was never any food in the home. Law enforcement transported Mother to a local hospital for a mental health evaluation, and the DCS placed the Children in foster care.

On March 5, 2010, the juvenile court held a CHINS factfinding hearing, where the juvenile court heard evidence and adjudicated the Children as CHINS. At the dispositional hearing on March 23, 2010, the juvenile court issued its Order on the CHINS Disposition Hearing, wherein the court granted the DCS wardship of the Children. Mother was ordered to participate in psychological and psychiatric evaluations and to follow recommended treatment. Additionally, the juvenile court ordered

supervised visitation, family and individual counseling, homebased case management, and a parenting assessment and follow-up.

Mother received her evaluation but refused to grant the DCS access to her medical records to determine if Mother was properly following the doctor's recommendation. The DCS attempted to schedule a psychological evaluation, but service providers informed the DCS that, until Mother was properly taking her medication, they would be unable to perform an evaluation.

Later, at some point in 2010, police discovered Mother living in a park. The DCS was notified that Mother had been taken to the hospital. When Mother was released, she again refused to allow the DCS to view her medical records. The ongoing DCS family case manager, Rebecca Blair, did not believe that Mother was taking her medication.

On August 5, 2010, Mother underwent a psychological assessment, after which she was diagnosed with a delusional disorder. Dr. Ronald Ruff, the clinical psychologist who supervised the assessment, stated that the type of disorder Mother has is likely to place a child's welfare significantly at risk. Dr. Ruff's assessment stated that Mother's illness is "severe and pervasive and chronic." Tr. p. 82. He believed that without treatment, Mother's prognosis was very poor. He recommended that Mother seek immediate psychiatric treatment so that her medical needs could be evaluated. He also believed that Mother should not be alone with the Children.

On June 17, 2011, the juvenile court entered its order authorizing the DCS to file its petition for involuntary termination of Mother's parental rights, and on August 6,

2013, the juvenile court held an evidentiary hearing on the termination petition. At the evidentiary hearing, the juvenile court heard evidence from the DCS and Dr. Ruff that Mother was mentally ill, that she refused to take her medication, and that the Children would be at risk if she were to continue to parent. DCS family case manager Blair testified that Mother was resistant to psychological treatment and evaluation and that the Children believed Mother failed to take her medication during their visitations with her. Another of Mother's DCS family case managers, Charlie Brooks, testified that he had also witnessed Mother's resistance to treatment and did not believe that it was in the Children's best interest to return to Mother's care. Mother presented evidence that she has a support system, comprised of her mother, step-father, Children's father, and her sister. Mother stated that she could provide a safe and stable home for the children. On August 13, 2013, after taking the matter under advisement, the juvenile court issued its order terminating Mother's parental rights.

Mother now appeals.

DISCUSSION AND DECISION

I. Standard of Review

We initially observe that the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to raise their children. Troxel v. Granville, 530 U.S. 57, 65 (2000); Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). However, parental rights are not absolute and must be subordinated to the child's interest in determining the proper disposition of a petition to

5

terminate parental rights. In re D.D., 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004). Thus, "parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. at 265. The purpose of terminating parental rights is not to punish parents but to protect their children. In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004).

When reviewing the termination of parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009). Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment below. Id. Here, the juvenile court made specific findings of fact and conclusions of law in its order terminating Mother's parental rights.

Where the juvenile court enters specific findings and conclusions, we apply a two-tiered standard of review. Bester, 839 N.E.2d at 147. We first determine whether the evidence supports the findings, and then whether the findings support the judgment. Id. We will not set aside the juvenile court's judgment unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). A judgment is clearly erroneous when the evidence does not support the findings, or the findings do not support the result. In re S.F., 883 N.E.2d 830, 834 (Ind. Ct. App. 2008).

The elements that the DCS must allege and prove by clear and convincing evidence in order to effect the termination of parental rights are set forth in Indiana Code section 3l-35-2-4(b)(2), which provides:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
. . .

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

I.C. § 31-35-2-4(b)(2).

We note that Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, which requires that only one of the sub-elements, under subsection (B), be proven true by clear and convincing evidence.  In re L.S., 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

7

## II. Termination of Mother's Parental Rights

### A. Conditions Remedied

Mother argues that the termination of parental rights order must be set aside because the DCS failed to prove that the conditions that led to the Children's removal will not be remedied. Specifically, the DCS claims that the conditions will not be remedied because mother remains resistant to psychological treatment and taking her medication.

Mother argues that the psychological evaluation relied on by the juvenile court was unreliable because Dr. Ruff "never met with [Mother] and his assistan[t] who conducted the evaluation only met with her once." Appellant's Br. p. 9. Mother additionally asserts that her behavior at that time could be explained because she was suffering from depression. Additionally, Mother contends that the juvenile court erred when it failed to take into account her completion of parenting classes, her participation in visitation, and her family support system. She maintains that she is now financially sound and has stable housing.

When determining whether the conditions that led to a child's removal will not be remedied, the juvenile court must judge a parent's fitness to care for his or her child at the time of the termination hearing. In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). However, the juvenile court's inquiry must also evaluate a parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. Id.

The juvenile court may properly consider a parent's history of neglect, failure to provide support, lack of adequate housing, and lack of employment, among other things. McBride v. Monroe Cnty. OFC, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). The juvenile court may also consider the services that the DCS has offered to a parent and the response to those services. In re M.S., 898 N.E.2d 307, 311 (Ind. Ct. App. 2008).

The evidence at the termination hearing demonstrated that the conditions that led to the removal of the Children have not been remedied. Specifically, Mother suffers from a delusional disorder, and yet refuses to take her medicine. Tr. p. 80, 101, 104. Mother is resistant to psychological treatment, and Dr. Ruff testified that, without proper treatment and medication, Mother is a danger to the Children. Id. at 101, 104, 80.

In sum, the evidence established that Mother was unwilling or unable to comply with the medical treatment necessary to allow her to care for the Children. As a result, it was proper for the juvenile court to conclude that there was a reasonable probability that the conditions that resulted in the Children's removal would not be remedied. In effect, Mother's claims amount to an invitation to reweigh the evidence—an invitation that we decline.

### B. Children's Best Interest

Mother also contends that the juvenile court erred when it determined that termination of her parental rights was in the Children's best interest. She argues that the trial court failed to consider how much the Children love Mother and the suffering Children will experience when they are separated from Mother.

9

In determining what is in the best interest of a child, the juvenile court is required to look beyond the factors identified by the DCS and to consider the totality of the evidence. McBride, 798 N.E.2d at 203. In so doing, the trial court must subordinate the interests of the parent to those of the child. Id. The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Id. Moreover, we have previously held that the recommendations of the case manager to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. In re J.S., 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

Here, the juvenile court found that Mother was a "threat to herself and definitely a threat to the children." Appellant's App. p. 2. It determined that Mother was unwilling and unable to participate in treatment for her mental disorder. Id. Additionally, Charlie Brooks, the DCS family case manager at the time of the termination hearing, testified that the Children were doing well with their foster mother, who wished to adopt them. Tr. p. 127. He stated that "the children have stability in their lives, and to put them in a home that's really not stable and constantly the possibility of then having to move around and stuff would not be good for them." Id. Under these facts and circumstances, we conclude that the DCS proved by clear and convincing evidence that the termination of Mother's parental rights was in the Children's best interest.

The judgment of the juvenile court is affirmed.

NAJAM, J., and CRONE, J., concur.