**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 11 2014, 9:49 am

_Kevin S. Smith_

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHERYL A. GRIFFIN**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General

**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE            )
TERMINATION OF THE PARENT-      )
CHILD RELATIONSHIP OF:          )
                                )
J.F. & N.F. (Minor Children),   )
                                )
   and                          )
                                )
A.M. (Father),                  )
                                )
      Appellant-Respondent,     )
                                )
          vs.                   )      No.  34A02-1309-JT-829
                                )
THE INDIANA DEPARTMENT OF       )
CHILD SERVICES,                 )
                                )
      Appellee-Petitioner.      )

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable Lynn Murray, Judge
Cause Nos. 34C01-1304-JT-101 and 34C01-1304-JT-104

**April 11, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-Respondent A.M. (Father) appeals the termination of his parental rights with respect to his children J.F., born September 13, 2006, and N.F., born December 7, 2010 (the Children). More particularly, Father contends that appellee-petitioner Indiana Department of Child Services (DCS) did not present sufficient evidence to support the juvenile court's determination that there was a reasonable probability that Father would not remedy the conditions that led to the Children's removal. Father argues that the DCS failed to show that he did not have stable or suitable housing. Concluding that the DCS provided clear and convincing evidence to support the finding that Father was not likely to remedy the conditions that led to the Children's removal, we affirm the judgment of the trial court.

## FACTS

In June 2011, the DCS received a report that the Children were not being cared for properly. The DCS assessed the family home and found that: the home needed to be cleaned, the home had roaches in the kitchen, and the Children had not been bathed in

days. The DCS assessor returned a few days later to find the home in slightly better condition, but the home reverted to its original condition within a month.

On July 26, 2011, two DCS caseworkers went to the home and discovered that: 1) there was a strong odor of decaying food, trash, and urine; 2) there was little food in the home; 3) the home did not have running water; 4) the electricity was going to be shut off that evening; 5) cockroaches infested the kitchen; 6) the house had fleas, which had been biting the children and bit the DCS caseworkers who visited; 7) the children had a foul odor; and 8) N.F. had insect droppings in his ears. The DCS caseworkers removed the children that same day and placed them in foster care.

When the DCS became involved, Mother told the DCS that J.F. has been diagnosed with ADHD and bipolar disorder. When DCS removed the Children, J.F. was evaluated and diagnosed with disruptive behavior disorder and post-traumatic stress disorder. When the Children were first placed in foster care, J.F suffered from night terrors, but these have now lessened. However, when Father visits J.F., these terrors occur more often. Since Father's visits have been suspended due to incarceration, J.F. no longer has these terrors.

The juvenile court held a fact-finding hearing on September 12, 2011. Although Father was incarcerated when the DCS removed the children on July 26, 2011, he did reside in the home prior to his incarceration, and he agreed that the family needed services to prevent the Children's removal. Both Mother and Father stipulated that the

3

Children were CHINS at the fact-finding hearing.[1]  The juvenile court adjudicated the Children as CHINS and found that the home was unsafe and unsanitary, cluttered with dirty clothing, food, and trash, without running water, infested with fleas and cockroaches, and that Father was incarcerated when the Children were removed from the home and remained so at the time of the hearing.

On October 14, 2011, the juvenile court held a dispositional hearing, at which it granted wardship to the DCS and maintained Children's foster care placement.  It also ordered Father to participate in services pursuant to an incorporated parental participation order.  On January 23, 2012, Father was represented by counsel at the dispositional hearing, but did not appear.  The juvenile court found that Father had failed to visit children and had declined DCS services.  On April 16, 2012, the juvenile court held a periodic review hearing and determined that, because Father was incarcerated, the DCS was unable to provide Father with services.  The juvenile court ordered Father to contact the DCS when he was released to establish visitation and services.

On July 17, 2012, the juvenile court held a permanency review hearing.  At that point, the juvenile court maintained a permanency plan for reunification.  However, it found that Father was not in compliance with that plan as his repeated incarcerations had caused him to miss visitation.  The juvenile court held further periodic review hearings on October 15, 2012, January 15, 2013, and April 15, 2013.  On January 15, 2013, the juvenile court found that as Children had been removed from the parents' care for fifteen

---

[1] Mother has consented to the Children's adoption, and this case concerns only the termination of Father's parental rights.

months, the DCS would be filing for involuntary termination of parental rights. On April 15, 2013, the juvenile court again found that Father was unable to participate in services or visitation because of his incarceration.

On April 9, 2013, the DCS filed its termination petition for each of the Children, and on July 22, 2013, the juvenile court held an evidentiary hearing. At the hearing, Father could not remember the dates the Children were born, and he did not know their ages. At the time the DCS removed the Children, there was a no contact order between Father and J.F., because Father had pushed J.F.[2] Eventually, the no contact order was lifted, and Father visited with both Children in a supervised setting at The Villages. At the hearing, Father testified that he had missed no more than ten visits because of his incarcerations. Father's visits never progressed to semi-supervised or unsupervised visits.

At the hearing, Father could not recall how many times he had been incarcerated and guessed that he had been incarcerated three or four times. Father has an extensive criminal history. In 1990 he was convicted of child molestation as a class D felony; in 2008 he was convicted of theft and sentenced to serve three years at the Department of Corrections. During the CHINS proceedings in April 2012, Father pleaded guilty to invasion of privacy, and he was sentenced to one year in the local jail suspended to supervised probation. On April 10, 2013, Father was charged with resisting law enforcement; the charge was pending as of the time of the termination hearing. At the

---

[2] This incident led to a battery charge that was later dismissed.

5

time of the termination hearing, Father was facing another charge for invasion of privacy for continuing to meet Mother although he knew there was a no contact order.

Father also testified that he was homeless and that he lived "here and there." Tr. p. 39. He testified that he currently lived with his girlfriend, although his name was not on the lease. However, he later testified that he did not live with his girlfriend and that he only visited. Father has lived with his mother, sister, niece, and his friends. Father testified that he had not attempted to find a stable home because he believed the Children would live with Mother. Father stated that he wanted the children to come live with his niece, but a DCS case manager had visited the niece's residence and found that it was not suitable for children.

At the hearing, Family Case Manager (FCM) Mike Deardorff testified that he did not believe the conditions that led to the Children's removal would be remedied because Father was homeless and was consistently in and out of jail and there was no stability for the children. Court appointed special advocate (CASA) Kathryn Hillman testified that she did not believe that Father would be able to parent the Children full time, and stated that she had no reason to believe Father could provide the children with a stable environment.

After the evidentiary hearing on January 22, 2013, the juvenile court took the matter under advisement, and, on August 26, 2013, it entered its order terminating Father's parental rights. In its order, the juvenile court found that the conditions that led to the removal of the Children were unlikely to be remedied as father could not provide a

6

stable environment for the Children. The juvenile court also found that DCS had a plan for the Children, which was to place them for adoption.

Father now appeals.

DISCUSSION AND DECISION

I. Standard of Review

We initially observe that the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to raise their children. Troxel v. Granville, 530 U.S. 57, 65 (2000); Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). However, parental rights are not absolute and must be subordinated to the child's interest in determining the proper disposition of a petition to terminate parental rights. In re D.D., 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004). Thus, "parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. at 265. The purpose of terminating parental rights is not to punish parents but to protect their children. In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004).

When reviewing the termination of parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009). Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment below. Id. Here, the juvenile court made specific findings of fact and conclusions of law in its order terminating Mother's parental rights.

7

Where the juvenile court enters specific findings and conclusions, we apply a two-tiered standard of review. Bester, 839 N.E.2d at 147. We first determine whether the evidence supports the findings, and then whether the findings support the judgment. Id. We will not set aside the juvenile court's judgment unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). A judgment is clearly erroneous when the evidence does not support the findings or the findings do not support the result. In re S.F., 883 N.E.2d 830, 834 (Ind. Ct. App. 2008).

The elements that the DCS must allege and prove by clear and convincing evidence in order to effect the termination of parental rights are set forth in Indiana Code section 3l-35-2-4(b)(2), which provides:

(A) that one (1) of the following is true:

    (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii) A court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

. . .

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

I.C. § 31-35-2-4(b)(2).

We note that Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, which requires that only one of the sub-elements, under subsection (B), be proven true by clear and convincing evidence. In re L.S., 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

## II. Termination of Father's Parental Rights

Father raises one issue on appeal. He argues that the juvenile court did not prove by clear and convincing evidence that the conditions that led to the Children's removal would not be remedied. More particularly, Father contends that the evidence did not show that he did not have stable and suitable housing.

When determining whether the conditions that led to a child's removal will not be remedied, the juvenile court must judge a parent's fitness to care for his or her child at the time of the termination hearing. In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). However, the juvenile court's inquiry must also evaluate a parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. Id.

9

The juvenile court may properly consider a parent's history of neglect, failure to provide support, lack of adequate housing, and lack of employment, among other things. McBride v. Monroe Cnty. OFC, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). The juvenile court may also consider the services that the DCS has offered to a parent and the response to those services. In re M.S., 898 N.E.2d 307, 311 (Ind. Ct. App. 2008).

First, we note that Father's incarcerations have necessarily precluded him from obtaining stable housing for the Children. At the evidentiary hearing, Father could not remember how many times he had been incarcerated. Tr. p. 42. However, he admitted that his incarceration had caused him to miss visitation on many occasions. Id. at 53. Father was incarcerated at the time that the Children were removed from Mother's care, and he faced charges for three separate crimes during the underlying CHINS and termination proceedings. Exhibit 4; Tr. p. 47, 61. Father's history of incarceration creates doubt as to whether he will be available to provide housing and care for the Children.

Moreover, the record demonstrates that Father contradicted himself several times concerning his living situation. He told the juvenile court that he was homeless and then stated that he was living with his girlfriend, although his name was not on the lease. Later, Father testified that he did not live with his girlfriend and only visited. Id. at 42, 48. Father has also lived with his mother, sister, niece and friends. Id. at 39, 40, 48, 63. While Father stated that he planned to have the Children placed with him and his niece, a

10

DCS case manager found his niece's home to be unsuitable for the Children. Id. at 62, 95, 86.

Finally, DCS FCM Deardorff and CASA Hillman did not believe that Father would provide stable housing or care for the Children. At the evidentiary hearing, FCM Deardorff testified that he did not believe the conditions that led to the Children's removal would be remedied because Father "has never had a stable home for himself, much less for his children." Id. at 91. CASA Kathryn Hillman testified that, if the Children were placed with Father, she "had no reason to believe that the children will have a stable environment to live in." Id. at 107.

Under these facts and circumstance, we conclude that the DCS showed by clear and convincing evidence that the conditions that led to the Children's removal would not be remedied.

The judgment of the juvenile court is affirmed.

BARNES, J., and CRONE, J., concur.

11