## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 05 2016, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Offices
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

K.S. *(Minor Child)*
    *Child in Need of Services*
and

C.S. *(Father)*,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 5, 2016

Court of Appeals Case No.
09A04-1604-JC-872

Appeal from the Cass Circuit Court

The Honorable Leo T. Burns, Jr., Judge

Juvenile Court Cause No.
09C01-1601-JC-4

**Robb, Judge.**

# Case Summary and Issue

[1] C.S. ("Father") appeals the juvenile court's adjudication of his child, K.S., as a child in need of services ("CHINS"). He raises two issues for our review, one of which we find dispositive: whether Father was deprived of due process. Concluding Father was deprived of due process, we reverse and remand with instructions.

# Facts and Procedural History

[2] In April 2013, C.H. ("Mother") gave birth to twins, M.H. and B.H ("Twins"). Father is not the Twins' legal father, but Father began acting in a custodial capacity around August 2013 when he and Mother began dating. Mother and Father then had a child, K.S., in July 2014. In November 2015, Father and Mother ended their relationship and the Twins and K.S. moved in with Father.

[3] On December 23, 2015, Cass County Family Case Manager Josh Bault received a report Father and Mother neglected the children. Specifically, the report alleged instances of domestic violence, physical abuse of the children, drug use in the home, and drug use in the presence of the children. Bault then visited Father's home. Father acknowledged he sometimes used a ruler to discipline his children, but Bault did not observe any signs of physical abuse to the children. In addition, Father admitted to periodically smoking marijuana. Bault also spoke with Mother by phone and Mother admitted to smoking marijuana. Father refused to submit to a drug screen and neither Mother nor Father gave Bault permission to screen the children for drugs. Ultimately,

Bault did not deem removal necessary and scheduled a meeting with Mother on January 5, 2016.

[4] On January 5, 2016, Bault met with Father, Mother, and the children at Father's home. Mother arrived smelling of alcohol and admitted to having a few beers prior to the meeting. Mother and the children submitted to an oral swab drug screening; Father declined. Although not clear from the record, it appears Department of Child Services ("DCS") alleged the results of the drug screens indicated Mother and the children tested positive for tetrahydrocannabinol ("THC"), a metabolite of marijuana. All three children were immediately removed and DCS placed K.S. in foster care.

[5] On January 8, 2016, DCS filed a petition alleging K.S. was a CHINS. Under a separate cause number, DCS also filed a petition alleging the Twins were CHINS. The juvenile court first held a fact-finding hearing with regard to the Twins and only Mother attended. Nothing pertaining to the Twins' CHINS proceedings is included in the current record on appeal,[1] but the record does note Mother admitted the Twins *and* K.S. were CHINS at the Twins' fact-finding hearing.

---

[1] Although not clear from the record, it appears DCS admitted evidence at this fact-finding hearing with regard to the results of Mother's and the children's drug screens. In addition, it further appears Bault testified as to some potential contamination of the children's drug screens. Again, this evidence has not been included as a part of the current record on appeal.

[6]   On February 17, 2016, the juvenile court held a fact-finding hearing regarding K.S., which both Mother and Father attended.  At the beginning of the hearing, the juvenile court stated its intention to incorporate the records from the Twins' fact-finding hearing, namely to show Mother admitted K.S. is a CHINS:

> [Juvenile Court:]  With regard to [Mother], any objection if I incorporated the records from [the Twins' CHINS proceeding] showing her admission  . . . with regard to [K.S.]?
> [Mother's Counsel:]  No, that would be fine, Judge.
> [Juvenile Court:]  [Father's counsel], what does [Father] intend to do with regard to the fact-finding with regard to [K.S.]?
> [Father's Counsel:]  [Father] is in kind of an awkward place, he's not the custodial parent, there's been never a judicial determination of paternity, . . . he thinks the child is perfectly fine with him, and wants her back, but I am not sure what his standing is.  He, he denies [K.S.] is in need of services still, because he is perfectly able to do it.  I've explained to him that the DCS may not be able to place her there though because he's not the custodial parent nor has the judicial determination been made that he is a parent.

Transcript at 23-24.  The juvenile court believed the testimony could establish paternity and proceeded with the fact-finding hearing.[2]

[7]   Father testified first and admitted to occasionally smoking marijuana.  The following colloquy then occurred:

> [DCS:]  You don't know how [the children] tested positive for drugs?

---

[2] The juvenile court concluded Father is K.S.'s legal father.  The State does not challenge this conclusion.

[Father:]  Yeah, I know how they tested positive.
[DCS:]  And how is that?
[Father:]  [Mother] touched the samples.
[DCS:]  And she had enough saliva on her hand for one of the drug screens?
[Father:]  Sweat, body fluids.
[DCS:]  And what about those screens she didn't touch?
[Father:]  She touched every one of them.

*Id*. at 27.  At this point in the fact-finding hearing, no evidence regarding the drug screens had been admitted into evidence and no other discussions with Father regarding the drug screens occurred.

[8]  DCS then called Bault to testify as to his administration of the drug screens:

[DCS:]  [D]id you ask everyone present to submit to the drug screens?
[Bault:]  I did, and [Mother] stated she would.  [Father] stated he would not, and [Mother] gave permission for the children to be screened as well.
* * *
[DCS:]  And what were the results of [Mother's] drug screen?
[Bault:]  [Mother's] drug screen was positive for THC, which is a metabolite of marijuana.
[DCS:]  And who, do you recall whose drug screen you administered next?
[Bault:]  Honestly, I don't know.  There were three children that we decided that we were going to administer to, huh, and children do take assistance, that is not abnormal, and it's not also abnormal for children to fight the process because they don't want a cotton swab stuck in their mouth.  So none of those . . . I know we talked about [the administration of the tests] in the last hearing, but nothing abnormal happened other than the two things that were suggested . . . that one of the swabs did drop to the floor at one point during the process and one swab had to be

taken out of the mouth by the mother and placed into the test tube.

[DCS:] And how many drug screens have [you] administered, if you, approximate?

[Father's Counsel:] Judge that in [sic] interesting, but I don't think it is relevant, what's relevant is what happened here; we've been over that ground several times already. I object to the repetitive testimony.

* * *

[Juvenile Court:] Yeah, my, my inclination would be to overrule the objection, I think it could come in, my ultimate concern is I incorporated the records from [the Twins' hearing], I did that because I was ahead of myself because I thought [Father] was in, I thought we were lining up for an admission, so to the extent that I've heard that testimony, unless there was a stipulation by the parties, the practice here in the court is . . . to at least have the testing agency testify, so if the ultimate goal is to get the results of the children in, I am tipping my hand, I am not going to rely on that evidence.

*Id*. at 37-41. Bault never testified whether the children tested positive for drugs. In addition, it does not appear the parties stipulated to the admission of the results of the drug screens nor did a representative of the testing agency testify as to the results of the drug screens.

[9]     On February 18, 2016, the juvenile court adjudicated K.S. a CHINS. Specifically, the court made four findings in support of its conclusion: (1) Mother was under the influence of alcohol when she met with Bault, (2) Mother and children submitted to oral drug screens, (3) Father refused to submit to a drug screen but admitted to using marijuana, and (4) Mother and the children tested positive for THC. Following a dispositional hearing, the

juvenile court ordered Father to participate in services and further ordered K.S.'s continued placement in foster care. This appeal ensued.

# Discussion and Decision

## I. Due Process

Due process protections bar state action that deprives a person of life, liberty, or property without a fair proceeding. *In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014). Due process protections at all stages of CHINS proceedings are "vital" because every CHINS proceeding has the potential to interfere with the rights of parents in the upbringing of their children. *Id.* Therefore, both CHINS proceedings and termination of parental rights proceedings "are deeply and obviously intertwined to the extent that an error in the former may flow into and infect the latter . . . ." *Id.* In determining whether a due process violation occurred in a CHINS proceeding, we balance the three factors laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976): "(1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure." *Id.* at 1165-66 (citations omitted). Ultimately, the resulting balance of these factors must provide parents in a CHINS proceeding "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 1166 (quoting *Mathews*, 424 U.S. at 333).

# II. Drug Screens

[11] Father argues he was deprived of due process when the juvenile court considered the results of the drug screens in adjudicating K.S. a CHINS. Specifically, Father claims the juvenile court did so after stating it would not consider those results and without giving Father a meaningful opportunity to contest the results.[3]  We agree.

[12] Consistent with *Mathews*, we first acknowledge Father's rights as a parent are clearly affected by the juvenile court's adjudication of K.S. as a CHINS and her continued placement in foster care.  *See In re G.P.*, 4 N.E.3d at 1165 ("[E]very CHINS proceeding has the potential to interfere with the rights of parents in the upbringing of their children.") (citation and internal quotation marks omitted). In addition, the State has a compelling interest in protecting the welfare of the children.  *In the Matter of E.M.*, 581 N.E.2d 948, 952 (Ind. Ct. App. 1991), *trans. denied*.

[13] As to the risk of error, we note a parent must be permitted to view the evidence used to support the adjudication of his or her child as a CHINS and must be given an opportunity to respond to that evidence.  *In re Termination of Parent-Child Relationship of S.F.*, 883 N.E.2d 830, 836 (Ind. Ct. App. 2008); *see also* Ind. Code § 31-32-2-3(b) (entitling parents in CHINS proceedings to cross-examine

---

[3] The State argues Father has waived his claims for failure to present a cogent argument pursuant to Indiana Appellate Rule 46(A)(8).  We disagree and address the merits of Father's claims.

witnesses, obtain evidence by compulsory process, and introduce evidence). Here, we take issue with the juvenile court's procedure, not an improper action by the State. The juvenile court specifically stated it would not consider the results of the drug screens unless the parties stipulated to the admission of such evidence or a representative of the testing agency testified, neither of which occurred. Despite this, the juvenile court still considered the results of the drug screens in adjudicating K.S. a CHINS. We therefore conclude the juvenile court deprived Father of the opportunity to cross-examine Bault in regard to the drug screens or to offer his own evidence contradicting the results of the drug screens.

[14] The State argues the juvenile court's error was harmless because Father's own testimony establishes the children tested positive for THC. We disagree. The State specifically asked Father whether he had knowledge of *how* the children tested positive for drugs, despite there being no evidence at that point in the proceeding showing the children *had* tested positive for drugs. Father acknowledged he knew *how* the children tested positive, claiming Mother had touched the samples and contaminated the cotton swabs. In addition, Father never acknowledged what drug the children may have tested positive for. Therefore, Father only stated he knew how the children tested positive for drugs and there is no evidence in the record showing the children did, in fact, test

positive for marijuana.[4]  As a result, we are not persuaded the juvenile court's error is harmless.

[15]  In sum, the juvenile court explicitly stated it would not rely on the results of the drug screens and denied Father a meaningful opportunity to contest the results. We conclude Father was deprived of due process when the juvenile court then considered the results of the drug screens in adjudicating K.S. a CHINS.

## III.  Contested Fact-Finding Hearing

[16]  Father also argues he was deprived of due process when the juvenile court allegedly denied his right to a contested fact-finding hearing in regard to the Twins.  Specifically, he contends he acted in a custodial capacity with regard to the Twins and therefore he was entitled to a fact-finding hearing as to the Twins.  Father's argument fails.  It is clear from the record DCS filed separate petitions under separate cause numbers alleging the Twins and K.S. were CHINS and adjudicated the Twins as CHINS following a separate fact-finding hearing.  Father now only appeals the juvenile court's adjudication of K.S. as a

---

[4] The State further contends evidence of the drug screen results is part of the record because the juvenile court incorporated the records from the Twins' fact-finding hearing, which Father did not object to and failed to include as a part of this record.  It is not clear the juvenile court incorporated any evidence pertaining to the drug screens because the court only incorporated the records for the purpose of showing Mother's admission. Therefore, Father only failed to object to the incorporation of Mother's admission.  However, even assuming Father has waived this claim, we conclude the juvenile court's error amounts to fundamental error.  "In order for this court to reverse based on fundamental error, the error must have been a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively."  *In re Involuntary Termination of Parent–Child Relationship of B.R.,* 875 N.E.2d 369, 375 (Ind. Ct. App. 2007), *trans. denied*.  Here, not only did the juvenile court consider the results of the drug screens after specifically stating it would not, it did so without giving Father the opportunity to respond.  We conclude this is fundamental error.

CHINS. Therefore, we have nothing in the record to guide us in addressing Father's argument with respect to the Twins' CHINS proceeding and his argument would be best addressed in a direct appeal of the juvenile court's order adjudicating the Twins as CHINS.

# Conclusion

[17] The juvenile court considered the results of drug screens not admitted into evidence after specifically stating it would not consider such evidence. This procedure denied Father a meaningful opportunity to respond to the allegation K.S. tested positive for THC, and thereby denied him due process. Accordingly, we reverse the juvenile court's adjudication and remand this cause for a new fact-finding hearing.

[18] Reversed and remanded.

Mathias, J., and Brown, J., concur.